# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RICHARD ISASI,                 )
                                 )
              Plaintiff,       )
                                 )
           v.                ) Civ. Action Nos. 06-2222 (RBW)
                                 )
PRISCILLA JONES et al.,      )
                                 )
             Defendants.     )
_____)

### DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Defendants[1], through and by undersigned counsel, hereby move to dismiss this action. In the alternative, the Court is asked to enter summary judgment in favor of the moving Defendants, pursuant to Fed. R. Civ. P. 56, on the grounds that there is no genuine issue as to any material fact and the Defendants are entitled to judgment as a matter of law.[2] In addition, Defendants, through and by undersigned counsel,

---

[1] As identified in the Complaint, the Defendants are: Priscilla Jones, Chief of the Administrative Staff in the Office of Information and Privacy, Department of Justice; Thomas McIntyre, **former** Chief of the Freedom of Information/Privacy Act Unit of the Criminal Division, Department of Justice; Richard Huff, **former** Co-Director of the Office of Information and Privacy, Department of Justice; Margaret P. Grafeld, Director, Office of Information Programs and Services, U.S. State Department.

[2] Plaintiff should take notice that any factual assertions contained in the affidavits and other attachments in support of Defendants' motion will be accepted by the Court as true unless the Plaintiff submits his own affidavits or other documentary evidence contradicting the assertions in the Defendants' attachments. *See Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992), Local Civil Rule 7(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific

oppose Plaintiff's Motion Order to Show Cause for Preliminary Injunction and Temporary

Restraining Order [sic], on the grounds that the injuries Plaintiff alleges bear no relation to the

cause of at action at bar. Further, the injuries claimed in no way prevent Plaintiff from litigating

the present case.

The Court is respectfully referred to the accompanying memorandum and to the

statement of material facts accompanying this motion. A proposed Order consistent with this

Motion is attached hereto.


Dated: March 18, 2008                    Respectfully submitted,


                                         ____/s/_____
                                         JEFFREY A. TAYLOR, DC Bar #498610
                                         United States Attorney


                                         _____/s/_____
                                         RUDOLPH CONTRERAS, DC Bar #434122
                                         Assistant United States Attorney


                                         ____/s/_____
                                         BRANDON L. LOWY
                                         Special Assistant United States Attorney
                                         555 Fourth Street, NW
                                         Washington, DC 20530
                                         Telephone: (202) 307-0364


                                         Attorneys for Defendant

---

facts showing that there is a genuine issue for trial. If the adverse party does not so respond,
summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RICHARD ISASI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 1:06-cv-02222 (RBW) |
| | ) | |
| PRISCILLA JONES et al., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to LCvR 7(h), Defendants hereby submit the following statement.

## I. <u>PLAINTIFF'S FOIA REQUESTS TO THE JUSTICE DEPARTMENT</u>

### A. <u>DOJ's Release of Responsive Documents to Plaintiff</u>

1. By letter dated March 31, 2003, Plaintiff made a Freedom of Information Act

("FOIA") request to the Department of Justice's Criminal Division (hereinafter "Criminal

Division"). Plaintiff requested the following:

> 1. Copy of the extradition Warrant with Affidavit and all supporting papers file [sic] with the New Jersey authorities while I was being extradited from Mexico to New Jersey on February 9, 1995;
>
> 2. All papers filed with the United States Marshall [sic] who handle the extradition and Order by the Mexican authorities filed also on February 9, 1995; and
>
> 3. Any and all documentation relevant to this matter maintain [sic] with the office of the United States Marshall who was involved in the Transaction within the treaty of the United States and Mexico and whether or not the document was amended to include the State of New York.

<u>See</u> Pamela A. Roberts Declaration ("Roberts Decl."), ¶ 4; Roberts Exh. 1.  Plaintiff provided his name as "Richard Isasi" or "Richard Isasi Diaz."  Roberts Decl., ¶ 4.  He did not list any additional aliases.  <u>Id.</u>

2.  By letter addressed to the Plaintiff dated June 26, 2003, the Criminal Division acknowledged receipt of Plaintiff's FOIA request on May 1, 2003, and assigned it case number CRM-20030055 1P.  Roberts Decl., ¶ 5; <u>see</u> Roberts Exh. 2.  Plaintiff was notified that the Criminal Division would conduct a search to determine what records the Division maintained within the scope of his request and would notify him once the search was completed.  Roberts Decl., ¶ 5.  The Criminal Division also provided Plaintiff with a list of other components within the Justice Department and other Federal agencies and suggested that he may wish to send requests to those additional offices if he had not already done so.  <u>Id.</u>

3.  By letter dated June 2, 2003, Plaintiff sent a second FOIA request to the Criminal Division. Roberts Decl., ¶ 6; <u>see</u> Roberts Exh. 3.  This request was similar to his first request. The request was signed "Richard Isasi" and no additional aliases were listed.  Roberts Decl., ¶ 6.

4.  By letter dated August 12, 2003, the Criminal Division acknowledged receipt of Plaintiff's second request and advised him that the Division was already processing a similar request from him.  Roberts Decl., ¶ 7; <u>see</u> Roberts Exh. 4.  The Criminal Division informed Plaintiff that he would be contacted when pertinent records had been received and processed. Roberts Decl., ¶ 7.

5. In the meantime, Plaintiff filed an administrative appeal with the Office of Information and Privacy ("OIP") of the Department of Justice, and OIP responded to the appeal on August 11, 2003.  <u>See</u> Roberts Exh. 5.  OIP explained to Plaintiff that the FOIA gives agencies twenty

days to respond to requests and therefore, his appeal at that time was premature. Roberts Decl., ¶ 8.

6.  By letter dated September 27, 2005, the Criminal Division's FOIA/PA (Privacy Act) Unit responded to Plaintiff's requests of March 31, 2003 and June 2, 2003, and informed him that 24 documents (items 1-24) within the scope of his request were located and that all records either required by statute, or considered appropriate as a matter of discretion, would be released to him. Roberts Decl., ¶ 9; see Roberts Exh. 6.  Items 1-20 were released to Plaintiff in full and attached to the response letter.  Roberts Decl., ¶ 9.  Items 21-23 were released in part and also attached to the response letter.  Item 24 was withheld in full.  Id.  Material was withheld pursuant to Exemptions 5, 6, 7(C) and 7(F) of the FOIA, 5 U.S.C. § 552(b)(5), (6), (7)(C) and (7)(F). Id. The letter also advised Plaintiff that the Criminal Division had located documents that originated with other agencies and those documents had been referred to those agencies for processing and a direct response to Plaintiff.  Id.  The agencies were the Executive Office for U.S. Attorneys ("EOUSA"), OIP (for documents that were of an interest to the Office of the Attorney General and Deputy Attorney General), the Department of Justice's Office of Legal Counsel ("OLC"), and the U.S. Department of State. Plaintiff was also notified of his right to an administrative appeal.  Id.

7. On October 21, 2005, OIP acknowledged receipt of Plaintiff's administrative appeal. Roberts Decl., ¶ 10; see Roberts Exh. 7.  OIP advised Plaintiff that there was a backlog of pending appeals and his continuing courtesy was appreciated.  Roberts Decl., ¶ 10.

8. On September 26, 2006, OIP responded to Plaintiff's administrative appeal and determined that item 24, which had been previously withheld pursuant to Exemption 5, 5 U.S.C. § 552(b)(5), could be released to Plaintiff in full.  Roberts Decl., ¶ 11; see Roberts Exh. 8.  OIP

released the document to Plaintiff and attached a copy of the document to the release letter. Roberts Decl., ¶ 11.  OIP explained that it was otherwise affirming, on partly modified grounds, the Criminal Division's action on his request.  Id.  OIP determined that the Criminal Division had properly withheld certain information that is protected from disclosure under the FOIA pursuant to Exemptions 5, 7(C), and 7(F), 5 U.S.C. § 552(b)(5), (b)(7)(C), and (b)(7)(F).  Id.

9.  On December 13, 2007, the Criminal Division's FOIA/PA Unit provided a supplemental response to Plaintiff.  Roberts Decl., ¶ 12; see Roberts Exh. 9.  In its response, the Criminal Division explained that an error had been made in referencing the date for item 24. Roberts Decl., ¶ 12.  It was explained that this document was actually dated March 19, 1996, and not March 19, 1995, which was listed on the response letter of September 27, 2005.  Id.  The letter also explained that upon review it was determined that item 22, which had been released in part pursuant to Exemption 5, could now be released in full.  Id.  A clean copy of item 22 was attached to the letter.  Id.

**B.  DOJ Office of Information and Privacy Administrative Processing of Referrals From DOJ Criminal Division**

10. On August 3, 2007, OIP provided a response to Plaintiff regarding the documents that the Criminal Division had referred for processing.  Roberts Decl., ¶ 13; see Roberts Exh. 10. OIP released to Plaintiff all of the documents, except one document marked as item 2, totaling two pages. OIP indicated in its letter that the document was withheld pursuant to Exemption (b)(5), 5 U.S.C. § 552(b)(5), on behalf of the Criminal Division. Roberts Decl., ¶ 13.

11. On February 15, 2008, the Criminal Division provided a supplemental response to Plaintiff.  Roberts Decl., ¶ 14; Roberts Exh. 11.  In its letter, the Criminal Division explained to Plaintiff that item 2 was being released to him in full based on a subsequent review of the

document and a review of other documents that had been released to Plaintiff. Roberts Decl., ¶ 14.

### C.  DOJ Criminal Division Administrative Processing of Referrals from the State Department

12. On January 28, 2008, the U.S. Department of State referred two documents to the Criminal Division labeled L2 and L10. Roberts Decl., ¶ 15. The documents originated with the Department of State but contained information that appeared to be of interest to the Criminal Division. Id. The Criminal Division recommended release of the documents with excisions to remove the name of the Legal Attaché and the names of third party suspects pursuant to Exemptions 6 and 7(C). Id.

13. On January 29, 2008, the U.S. Department of State referred three documents to the Criminal Division for processing and direct response to Plaintiff. Roberts Decl., ¶ 16; see Roberts Exh. 12. The Criminal Division reviewed the documents and, by letter dated February 13, 2008, released the three documents to Plaintiff in full. Roberts Decl., ¶ 16.

## II.  PLAINTIFF'S FOIA REQUESTS TO THE STATE DEPARTMENT

### A.  DOS's Release of Responsive Documents to Plaintiff: IPS Case Number 200300569

14. By letter dated February 12, 2003 (Exhibit 1), to the Department of State, the Plaintiff requested:

> 1. Copy of extradition warrant with affidavit and all supporting paper executing extradition from New Jersey state to Mexico Veracruz date Marz 10, 1995.
>
> 2. Copy of extradition warrant with affidavit and all supporting paper executing extradition from Mexico, Veracruz date Sept 4, 1997 to New Jersey state. [sic]

Margaret P. Grafeld Declaration ("Grafeld Decl."), ¶ 4; Grafeld Exh. 1.

15.  By letter dated March 3, 2003 (Exhibit 2), the Department of State's Office of Information Programs and Services ("IPS") acknowledged receipt of Plaintiff's request and assigned it case number 200300569.  Grafeld Decl. ¶ 5; see Grafeld Exh. 2.  IPS advised Plaintiff that his request was being processed and that he would be notified when responsive material was retrieved and reviewed; the cut-off date for retrieving records was the date of search initiation; only existing records were subject to the FOIA; and the Department's response may be delayed. Grafeld Decl., ¶ 5.

16.  By two letters dated June 23, 2003 (Exhibit 3), IPS informed Plaintiff that searches had been initiated of the Central Foreign Policy Records and the records of the Office of the Legal Adviser.  Grafeld Decl., ¶ 6; Grafeld Exh. 3.  IPS advised Plaintiff that it had completed the search of the Central Foreign Policy Records and had found six responsive documents. Grafeld Decl. ¶ 6.  Of these, four were released in full and two were released in part.  Id.  IPS further advised Plaintiff that no responsive documents were found during the search of the records of the Office of the Legal Adviser.  Id.  Plaintiff was informed of his right to appeal the denial of information.  Id.

17.  By letter dated July 1, 2003 (Exhibit 4) to the Chairman of the Appeals Review Panel, Plaintiff advised that the material he received from IPS was not what he had requested. Plaintiff indicated that the following four items were the subjects of his request:

> 1.  A copy of extradition warrant with affidavit and all supporting paper executing pertaining to [his] extradition from New Jersey State to Mexico Veracruz date Marz 10, 1995.
>
> 2.  A copy of the extradition and executive order from the magistrate of Mexico signed by [Plaintiff].  April 1995.
>
> 3.  A copy of the transportation document from the Mexican agents with place dated stated Sept 3, 1997.  [sic]

    4.  A copy of the transportation document from Webb Texas to New Jersey by the U.S. Marshals. Sept 4, 1997.  [sic]

Grafeld Decl., ¶ 7; Grafeld Exh. 4.

    18.  By letter dated July 16, 2003 (Exhibit 5), the Appeals Officer in IPS informed Plaintiff that because his July 1, 2003 letter did not appeal the denial of information, IPS did not open an appeal in this case.  Grafeld Decl., ¶ 8; Grafeld Exh. 5.  Plaintiff's letter was nevertheless referred to the same division in IPS that processed his request for its re-examination.  Grafeld Decl. ¶ 8.

    19.  By letter dated September 4, 2003 (Exhibit 6), IPS informed Plaintiff that additional searches had been conducted based on his letter of July 1, 2003.  Grafeld Decl., ¶ 9; Grafeld Exh. 6.  Searches of the retired files of the Bureau of Western Hemisphere Affairs and the U.S. Embassy in Mexico were performed and no responsive documents were located.  Grafeld Decl. ¶ 9.  IPS suggested to Plaintiff that the records he sought might be held by the Department of Justice ("DOJ") and provided him the address for that agency's FOIA office.  Id.

    20. By letter dated February 14, 2008 (Exhibit 7), Plaintiff was informed that the Department re-examined its search efforts in his request and conducted additional searches of records from the following records systems:  the Central Foreign Policy Records, the Office of the Legal Adviser, the Bureau of Western Hemisphere Affairs, and the U.S. Embassy in Mexico. IPS advised Plaintiff that these searches resulted in the retrieval of eleven additional responsive documents, of which four documents were released in full, three documents were denied in part, and four were DOJ documents that IPS referred to DOJ for its review and reply directly to the requester.  Id.  ¶ 10; Grafeld Exh. 7.

    **B.  DOS Administrative Processing of Referrals from DOJ Criminal Division**

      **1.  IPS Case Number 200504385**

21.  By memorandum dated September 27, 2005, DOJ referred 18 Department of State documents to IPS for review.  Grafeld Decl., ¶ 31.  IPS assigned case number 200504385 to this referral.  Id.  To facilitate internal processing, IPS separated the 18 documents referred by DOJ into 28 documents.  Id.

22.  In a series of letters between November 2005 and February 2006, Plaintiff and IPS corresponded regarding the status of the Department's processing of the documents referred by DOJ (Exhibit 8).  Id. at ¶ 32; Grafeld Exh. 8.

23.  With a letter dated July 25, 2006 (Exhibit 9), IPS released 24 of the Department of State documents in full, withheld one in full, and deemed three (fax cover sheets) non-responsive to the request.  Grafeld Decl., ¶ 33; Grafeld Exh. 9.  IPS informed Plaintiff of his right to appeal the denial of information.  Grafeld Decl. ¶ 33.

24.  By letter dated August 3, 2006 (Exhibit 10), Plaintiff claimed to IPS that documents were missing from the package he received on August 1, 2006, and requested that IPS locate the documents and provide him with copies.  Grafeld Decl., ¶ 34; Grafeld Exh. 10.

25.  By letter dated August 21, 2006 (Exhibit 11), to the Chairman of the Appeals Review Panel, Plaintiff appealed the denial of FOIA referral no. 200505014 and listed 8 document numbers in FOIA referral no. 200504385 that appeared to be missing from the package he received.  Grafeld Decl., ¶ 35; Grafeld Exh. 11.

26.  By letter dated September 28, 2006 (Exhibit 12), IPS informed Plaintiff that of the 28 documents referred to the Department by DOJ, three were not responsive to his request, one was not releasable, and 24 were sent to him on July 25, 2006.  Grafeld Decl., ¶ 36; Grafeld Exh. 12. IPS advised Plaintiff that there were no other Department of State documents retrieved in the search conducted by DOJ.  Grafeld Decl. ¶ 36.

27.  By letter dated October 30, 2006 (Exhibit 13), the IPS Appeals Officer acknowledged receipt of Plaintiff's appeal dated August 21, 2006 in case no. 200504385. Grafeld Decl.  ¶ 37; Grafeld Exh. 13.  With respect to the documents Plaintiff said were missing, the Appeals Officer explained that IPS separated and re-numbered some of the documents received from DOJ.  Grafeld Decl.  ¶ 37.  Specifically, five of the documents Plaintiff listed (J19-J23) did not exist; and two of the documents about which Plaintiff had asked, J8 and J9, were determined to be non-responsive.  Id.  The Appeals Officer advised that document J5 was denied in full and would be processed as an appeal.  Id.  (The appeal was subsequently terminated when it was overtaken by this litigation.  Id.)  With respect to Plaintiff's appeal of the denial of case number 200505014, the Appeals Officer informed Plaintiff that the documents had been returned to DOJ for its direct response to Plaintiff.  Id.

### 2.  IPS Case Number 200505014

28.  By memorandum dated November 8, 2005, DOJ referred four documents containing Department of State information to the Department for review, and asked for the Department's views on disclosing this information.  Grafeld Decl.  ¶ 38.  IPS assigned case number 200505014 to this referral.  Id.

29.  By memorandum dated February 14, 2006, IPS returned to DOJ the four documents referred for review and informed DOJ that the Department of State had no objection to the release of its information contained in the documents.  Id. at ¶ 39.

## III.  DOJ CRIMINAL DIVISION REFERRAL TO THE EXECUTIVE OFFICE OF UNITED STATES ATTORNEYS (EOUSA)

30.  On September 29, 2005, EOUSA received a Memorandum from the DOJ Criminal Division.  Declaration of David Luczynski ("Luczynski Decl."), ¶ 4.  This memorandum notified EOUSA that during processing of a Privacy Act request the DOJ Criminal Division had come

across records that originated in an office for which EOUSA is responsible.  Id.  As a result, 11

pages of records have been referred to the EOUSA for a direct reply to the requester.  Id.;

Luczynski Exh. A.

    31.  On October 28, 2005, EOUSA sent a letter to Plaintiff informing him of the

processing of his FOIA request.  Luczynski Decl., ¶ 5.  As a result, Plaintiff was provided with 9

pages of records released in full, and 2 pages of records released in part.  Id.  In addition, the

requester was advised that FOIA exemption 5 U.S.C. §552 (b)(6) and (7)(C) had been applied to

the withheld material.  Id.; Luczynski Exh. B.

    32.  On November 18, 2005, OIP received an appeal from the Plaintiff regarding

EOUSA's determination.  Luczynski Decl., ¶ 6; Luczynski Exh. C.  In response, OIP sent

Plaintiff a letter stating that it had affirmed EOUSA's determination of the Plaintiff's FOIA

request.  Id.; Luczynski Exh. D.

## IV.  DOJ CRIMINAL DIVISION REFERRAL TO THE DOJ OFFICE OF LEGAL COUNSEL (OLC)

    33.  On September 27, 2005, the DOJ Criminal Division referred to the OLC one

document that originated with OLC but that the Criminal Division located in its files while

processing Plaintiff's FOIA request.  Declaration of Paul P. Colborn ("Colborn Decl.), ¶ 3.  The

referral totaled sixteen pages, and it consisted of a fourteen-page draft legal opinion prepared by

the OLC for the DOJ Criminal Division and two one-page transmittal memoranda.  Id.  In its

referral, the Criminal Division asked that the OLC reply directly to Plaintiff concerning the

referred document.  Id. at ¶ 5.

    34.  In a letter dated September 30, 2005, the OLC advised Plaintiff that it was

withholding the document because it was "protected by the deliberative process and attorney-

client privileges and [was] not appropriate for discretionary release."  Id.; Colborn Exh. A.  In a

letter dated October 11, 2005, Plaintiff appealed OLC's decision to withhold the document to the

OIP.  Id. at ¶ 6; Colborn Exh. B.  In a letter dated March 27, 2006, OIP affirmed the OLC's

action, explaining that "OLC properly withheld information that is protected from disclosure

under the Freedom of Information Act pursuant to 5 U.S.C. § 552(b)(5).  This provision concerns

certain inter- and intra-agency communications protected by the deliberative process and

attorney-client privileges."  Id.; Colborn Exh. C.


Dated: March 18, 2008                          Respectfully submitted,

                                               _____/s/_____ _
                                               JEFFREY A. TAYLOR, D.C. BAR # 498610
                                               United States Attorney

                                               _____/s/_____ _
                                               RUDOLPH CONTRERAS, D.C. BAR #434122
                                               Assistant United States Attorney

                                               _____/s/_____ _
                                               BRANDON L. LOWY
                                               Special Assistant United States Attorney
                                               555 Fourth St., N.W.
                                               Washington, DC  20530
                                               Phone: (202) 307-0364 Fax: (202) 514-8780
                                               Brandon.Lowy@usdoj.gov

                                               Attorneys for Defendant

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RICHARD ISASI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 1:06-cv-02222 (RBW) |
| | ) | |
| PRISCILLA JONES et al., | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and

pertains to Plaintiff's alleged FOIA requests to the Defendants.  Plaintiff appears to have sought

to obtain documents pertaining to his extradition from Mexico to the United States, which

Plaintiff believed were in the possession of the U.S. Department of Justice ("DOJ") and the U.S.

Department of State ("DOS").  He alleges that the Defendants have improperly withheld the

records that he seeks.  See Compl. ¶ 22.  Specifically, Plaintiff initiated this Freedom of

Information Act ("FOIA") action against employees of DOJ and DOS in their individual

capacities, seeking completion of his FOIA requests for materials regarding his extradition to the

United States in 1996.[1]  At this juncture, however, there is no question that Defendants, after

conducting reasonable searches, have released all responsive documents found.   Plaintiff also

---

[1] Plaintiff also requested documents regarding his extradition from the State of New Jersey to Mexico, which did not take place.  See Declaration of Margaret Grafeld, ¶ 28.  The Plaintiff was ultimately tried by the authorities in New York.

makes <u>Bivens</u>-type[2] constitutional claims and seeks, inter alia, money damages.  Plaintiff, Richard Isasi, is an inmate confined at the Attica Correctional Facility, a state prison in Attica, New York.

Plaintiff's claims against all of the Defendants should be dismissed because this Court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  The Court lacks subject matter jurisdiction over these Defendants because none qualify as an "agency" under FOIA, and because the agencies have completed processing the FOIA requests at issue, such that the Plaintiff's claims are moot.  For the same reasons, Plaintiff fails to state a claim upon which relief can be granted, such that the Court should dismiss the case with prejudice under Fed. R. Civ. P. 12(b)(6).

In the alternative, all Defendants are entitled to summary judgment on the FOIA claims. No issue of material fact exists as to whether the Defendants received FOIA requests or are agencies subject to FOIA.  However, after DOJ and DOS exchanged correspondence with the Plaintiff and searched their files, the two agencies located responsive documents and duly notified Plaintiff of this development via multiple letters from 2003 to 2006.  With the permission of the Court, DOS and DOJ conducted a secondary, exhaustive file search for the documents Plaintiff requested – based on background information that was not in Plaintiff's original FOIA requests – and have released additional documents to Plaintiff.  Plaintiff cannot now deny that adequate searches have been conducted and that all responsive, non-exempt documents have been released to him by both agencies.  Thus, the Defendants deserve judgment as a matter of law.  To the extent that Plaintiff alleges <u>Bivens</u> claims against the Defendants, these claims should be dismissed for lack of subject matter jurisdiction.

---

[2] <u>Bivens v. Six Unknown Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

Finally, in a separate motion, Plaintiff alleges that Defendants and state officials were involved in preventing his mail deliveries at Attica Correctional Facility, a state prison in New York. Defendants oppose this motion because Plaintiff's claims bear no relation to the case at bar, and because Defendants are inappropriate parties to provide the relief requested.

## STATEMENT OF FACTS

Defendants hereby incorporate the Statement of Material Facts Not In Genuine Dispute, filed contemporaneously with this Memorandum.

## ARGUMENT

## I. LEGAL STANDARDS

### A. Requests For Dismissal

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a claim if Plaintiff's complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007) (clarifying the standard from Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also In re Sealed Case, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing Twombly). Hence, the focus is on the language in the complaint, and whether that language sets forth sufficient factual allegations to support plaintiff's claims for relief.

The court must construe the factual allegations in the complaint in the light most favorable to Plaintiff and must grant Plaintiff the benefit of all inferences that can be derived from the facts as they are alleged in the complaint. Barr v. Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need not accept any inferences or conclusory allegations that are

unsupported by the facts pleaded in the complaint.  <u>Kowal</u>, 16 F.3d at 1276.  Moreover, the

Court need not "accept legal conclusions cast in the form of factual allegations."  <u>Id.</u>

From the facts alleged in the complaint in this case, Plaintiff can prove no set of facts that would

entitle him to relief.[3]

### B.  <u>Evidentiary Standard For Summary Judgment</u>

Where no genuine dispute exists as to any material fact, summary judgment is required.

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).  A genuine issue of material fact is one

that would change the outcome of the litigation.  <u>Id.</u> at 247.  "The burden on the moving party

may be discharged by 'showing'—that is, pointing out to the [Court]—that there is an absence of

evidence to support the non-moving party's case."  <u>Sweats Fashions, Inc. v. Pannill Knitting</u>

<u>Company, Inc.</u>, 833 F.2d 1560, 1563 (Fed. Cir. 1987).  Once the moving party has met its

burden, the non-movant—here Plaintiff—may not rest on mere allegations, but must instead

proffer specific facts showing that a genuine issue exists for trial.  <u>Matsushita Elec. Indus. Co. v.</u>

<u>Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Thus, to avoid summary judgment, Plaintiff must

present some objective evidence that would enable the Court to find he is entitled to relief.

In <u>Celotex Corp. v. Catrett</u>, the Supreme Court held that, in responding to a proper

motion for summary judgment, the party who bears the burden of proof on an issue at trial must

---

[3]  In addition, subject matter jurisdiction over FOIA claims requires that a request was directed at an "agency."  The jurisdictional grant of FOIA states that "the district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld . . ." 5 U.S.C. § 552(a)(4)(B). The Supreme Court held that federal jurisdiction of FOIA claims is thus based "upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'"  <u>Kissinger v. Reporters Comm. For Freedom of the Press</u>, 445 U.S. 136, 150 (1980).  Therefore, if a FOIA request is not directed at an agency as defined by FOIA, the jurisdictional conditions are not satisfied.  <u>See</u> <u>Voinche v. Executive Office of the President</u>, 2007 U.S. Dist. LEXIS 42268 at *4 (D.D.C. June 12, 2007) (finding that the court lacked subject matter jurisdiction because the Executive Office of the President is not a "discrete agency subject to either FOIA or the Privacy Act").
  Plaintiff's claims against the Defendants should be dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(1) and (6), The FOIA subjects the Department of Justice and the Department of State to FOIA requests and makes them the only proper defendants in this case. <u>See</u> 5 U.S.C. § 552(f)(1).

"make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986); see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor). In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### B.   FOIA Summary Judgment Standards

In a FOIA action, summary judgment is appropriate when, as here, the pleadings, together with the declarations, demonstrate that "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Washington Post Co. v. U.S. Dept. of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989).

An agency satisfies the summary judgment requirements in a FOIA case by showing that each document was produced, not withheld, is unidentifiable, or is exempt from disclosure. Weisberg v. U.S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980). To meet its burden, the defendant may rely on affidavits or declarations and other evidence by the agency that show that the documents are exempt from disclosure. Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits or declarations if the "affidavits are 'relatively detailed, non-conclusory, and not impugned' by evidence . . . of bad faith on the part of the agency." Public Citizen, Inc. v. Dept. of State, 100 F. Supp. 2d 10, 16 (D.D.C. 2000) (quoting McGhee v. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983)). Once the Court determines that the declarations are sufficient, it need not inquire further. Students Against Genocide v. Department of State, 257 F.3d 828, 833 (D.C. Cir. 2001).

## II. **PLAINTIFF'S FOIA CLAIMS**

### A. **Defendants are Entitled to Judgment as a Matter of Law Because Adequate Searches Were Conducted and Responsive Materials Have Been Released.**

In responding to a FOIA request, an agency must conduct a reasonable search for responsive records. Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, et al., 844 F. Supp. 770, 776 (D.D.C. 1993); Weisberg v. U.S. Dept. of Justice, 705 F.2d 1344, 1352 (D.C. Cir. 1983). This "reasonableness" standard focuses on the method of the search, not its results, so that a search is not unreasonable simply because it fails to produce responsive information. Id. at 777 n.4. An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located. Oglesby, 920 F.2d at 68. Consistent with the reasonableness standard, the adequacy of the search is "dependent upon the circumstances of the case." Truitt v. Dept. of State, 897 F.2d 540, 542 (D.C. Cir. 1990). The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate." Steinberg v. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. Dept. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent and reasonable. Nation Magazine, 71 F.3d at 892 n.7. Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it. Maynard v. CIA, 986 F.2d 547, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to

produce the information requested." <u>Oglesby</u>, 920 F.2d at 68; <u>see</u> <u>SafeCard Servs. v. SEC</u>, 926

F.2d 1197, 1201 (D.C. Cir. 1991). "An agency may prove the reasonableness of its search

through affidavits of responsible agency officials so long as the affidavits are relatively detailed,

non-conclusory and submitted in good faith." <u>Miller</u>, 779 F.2d at 1383; <u>Goland v. CIA</u>, 607 F.2d

339, 352 (D.C. Cir. 1978), <u>cert.</u> <u>denied</u>, 445 U.S. 927 (1980). Although the agency has the

burden of proof on the adequacy of its search, the "affidavits submitted by an agency are

'accorded a presumption of good faith,'" <u>Carney v. Dept. of Justice</u>, 19 F.3d 807, 812 (2d Cir.

1994), <u>cert. denied</u>, 513 U.S. 823 (1994) (<u>quoting</u> <u>SafeCard Servs</u>., 926 F.2d at 1200). Thus,

once the agency has met its burden regarding adequacy of its search, the burden shifts to the

requester to rebut the evidence by a showing of bad faith on the part of the agency. <u>Miller</u>, 779

F.2d at 1383. A requester may not rebut agency affidavits with purely speculative allegations.

<u>See</u> <u>Carney</u>, 19 F.3d at 813; <u>SafeCard</u>, 926 F.2d at 1200; <u>Maynard v. CIA</u>, 986 F.2d 547, 559-

560 (1st Cir. 1993). As discussed below, all of the Defendants meet the reasonableness standard

in conducting their searches and are therefore entitled to summary judgment.[4]

      **1.  Plaintiff's FOIA Requests to DOJ**

        **a.  DOJ Criminal Division's Search for Responsive Records**

In processing requests from individuals seeking information on themselves, the Criminal

Division begins by searching its centralized records index, JUSTICE/CRM-001 (Central

Criminal Division Index File and Associated Records). Roberts Decl., ¶ 17. When a search of

this Central Index reflects responsive, or potentially responsive records, a search for such records

is sent to the section identified as having custody of the records. <u>Id.</u> In the present matter, a

---

[4] To the extent that Plaintiff's complaint seeks to invoke Federal Rule of Civil Procedure 65 for injunctive relief and immediate disclosure of the requested documents, it fails. The Court's order of November 2, 2007, granting Defendants' Motion for Extension of Time to February 15, 2008, indicates Plaintiff's lack of irreparable injury and renders his request moot. Additionally, the Plaintiff is unlikely to succeed on the merits of this case, and the Court should deny his request for injunctive relief.

search for Plaintiff's records in the JUSTICE/CRM-001 system of records was undertaken on August 4, 2003, using the names "Richard Isasi" and "Richard Isasi Diaz." Roberts Decl., ¶ 18. The search revealed records maintained by the Office of International Affairs for Plaintiff under the names "Richard Isasi, Luis Martinez, George Ortiz, and Luis Martino." Id.

The Criminal Division's FOIA Unit forwarded a request to the Office of International Affairs on August 4, 2003, attaching a copy of Plaintiff's request and requesting that all records and file systems in their office be searched. Roberts Decl., ¶ 19. Designated personnel employed by the pertinent section undertake a search for responsive materials and reports results by means of individual signed forms to the Criminal Division's FOIA/PA Unit. Id. Searches for responsive materials are to be undertaken in the same manner as if the Criminal Division were seeking the information for its own, official purposes.[5] Id. On October 7, 2003, the Office of International Affairs responded to the request indicating that it did not have a record within its office but a file was maintained in the records center. The records were forwarded to the Criminal Division's FOIA/PA Unit. Id.

Pamela A. Roberts, trial attorney for the FOIA/PA Unit in the Criminal Division of the U.S. Department of Justice, personally reviewed the original, signed search response in this case, and verified that the only file located for Plaintiff was reviewed and processed. Roberts Decl., ¶ 20. Only recently was it brought to the attention of Ms. Roberts that Plaintiff had several aliases, and although a search of files under his own name revealed some of the aliases, there was an additional alias that had not been searched. See Roberts Decl., ¶ 21. Therefore, a full search was

---

[5] Unlike the Federal Bureau of Investigation or the Federal Bureau of Prisons, the Criminal Division assigns no special identification numbers to individuals. Nor does it maintain files based on social security numbers. Nor does it maintain any field offices outside the Washington, D.C. area. Finally, unlike certain other law enforcement components, the Criminal Division maintains no separate "see reference" or "cross-reference" files requiring separate searches. Roberts Decl., ¶ 19.

conducted for each of Plaintiff's aliases as follows: Luis Martinez, George L. Ortiz, Veteran

Falco, and Luis Martino. Id.  Aside from the file maintained by the Office of International

Affairs, no additional files or records were located matching the district and dates described in

Plaintiff's request.  Id.

### b.  DOJ Properly Applied FOIA Exemptions 5, 6, 7(C), and 7(F)

The documents initially withheld from disclosure were pursuant to Exemptions 5, 6, 7(C)

and 7(F), 5 U.S.C. § 552(b)(5),(6), 7(C), and 7(F). Roberts Decl., ¶ 22.  The Criminal Division

and OIP subsequently released all information that had previously been withheld pursuant to

Exemption 5. See Roberts Exhs. 8, 9, and 11. The justification for the remaining exemptions is

explained below.

### i.  Exemptions 6 & 7(C)

FOIA Exemptions 6 and 7(C) permit the withholding of:

> (6)    personnel and medical files and similar files the disclosure of which would
>        constitute a clearly unwarranted invasion of personal privacy;

> (7)    records or information compiled for law enforcement purposes, but only to
>        the extent that the production of such law enforcement records or
>        information

>        (C)    could reasonably be expected to constitute an unwarranted
>               invasion of personal privacy …

5 U.S.C. § 552(b)(6) and (7)(C).

FOIA Exemption 6 protects personnel and medical files and similar files, the disclosure

of which would constitute a clearly unwarranted invasion of personal privacy. See 5 U.S.C. §

552(b)(6).  FOIA Exemption 7(C) protects records or information compiled for law enforcement

purposes, production of which could reasonably be expected to constitute an unwarranted

invasion of personal privacy. See 5 U.S.C. § 552(b)(7)(C).  Exemptions 6 and 7(C) each require

a balancing of the individual's right to personal privacy against the public's interest in shedding

light on an agency's performance of its statutory duties.  See Ripskis v. HUD, 746 F.2d 1, 3 (D.C.

Cir. 1984); see also U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press, 489

U.S. 749, 773 (1989).  The requester's identity, purpose in making the request, and proposed use

of the requested information have no bearing on this balancing test.  See id. at 771; see also

NARA v. Favish, 541 U.S. 157, 170-72 (reiterating that "[a]s a general rule, withholding

information under FOIA cannot be predicated on the identity of the requester," but adding that

this of course does not mean that a requester seeking to establish an overriding "public interest"

in the disclosure of requested information "need not offer a reason for requesting the

information") (Exemption 7(C)), reh'g denied, 541 U.S. 1057 (2004).

     Pursuant to Exemptions 6 and 7(C), the Criminal Division's FOIA/PA Unit
withheld:

1.     From Item 21 - the name, fax number of the U.S. Marshals Service and two names of the employees of the Office of International Affairs.[6]

2.     From Item 23 - the names of two Drug Enforcement Administration ("DEA") Agents.

3.     From State Department Documents marked L2 and L10 - the name of the Legal Attache and the names of third-party suspects.

Roberts Decl., ¶ 26.  The individuals, whose identities were withheld, as set forth above, were

not the requester, nor the names of government attorneys, state or federal.  See id. at ¶ 27.  The

items referenced above, were compiled to extradite Plaintiff, who was a fugitive, back to the

United States.  Id. at ¶ 28.  The Office of International Affairs, a component of the Office of

Enforcement Operations, oversees the extradition of international fugitives.  Id.  Here, Plaintiff

---

[6] The Criminal Division had invoked Exemptions 6 and 7(C) to remove the names of employees of the Office of International Affairs on Item 21. It has subsequently been determined that these names can be released. One employee's name is Maju D. Mattamal and a second name is designated as "el Guapo."

had been convicted of robbery in 1991.  Id.  Plaintiff fled the United States and was eventually

located in Mexico.  Id.  As such, the records here clearly meet the threshold requirement of FOIA

Exemption 7 of "records or information compiled for law enforcement purposes."  Id.

The individuals whose identities have been protected all maintain a substantial privacy

interest in not being identified with a criminal law enforcement investigation.  Id. at ¶ 29.

Identifying individuals associated with criminal investigations can subject them to innuendo,

embarrassment, and stigmatization or even harassment, retaliation and reprisals.  See Department

of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 780 (1989); see also

Computer Professionals for Social Responsibility v. U.S. Secret Service, 72 F.3d 897, 904 (D.C.

Cir. 1996) (noting "strong interest of individuals, whether they be suspects, witnesses, or

investigators, in not being associated unwarrantedly with alleged criminal activity" (quoting

Dunkelberger v. Dept. of Justice, 906 F.2d 779, 781 (D.C. Cir. 1990)).  On the other hand,

revealing such information is unlikely to add to the public's understanding of how an agency

works or how well it performs its statutory duties.[7]  See Cole-El v. U.S. Dep't of Justice, No. 03-

1013, slip op. at 10 (D.D.C. Aug. 26, 2004) ("[Plaintiff's] interest in attacking his conviction

does not constitute a public interest sufficient to overcome [a third party's] privacy interests.");

see also Beck v. Department of Justice, 997 F.2d 1489, 1494 (D.C. Cir. 1993).  On balance, the

FOIA/PA Unit determined that the substantial privacy interest that is protected by withholding

this information outweighs any minimal public interest that would be served by its release.

Roberts Decl., ¶ 30.  Such disclosure would be "clearly unwarranted" as required by 5 U.S.C. §

---

[7] Official information that sheds light on an agency's performance of its statutory duties falls squarely within the
statutory purpose of the FOIA. That purpose is not fostered, however, by disclosure of information about private
citizens that reveals little or nothing about an agency's own conduct. See U.S. Dept. of Justice v. Reporters
Committee for Freedom of the Press, 489 U.S. 748, 773 (1989).

552(b)(6). <u>Id.</u> Since this is the higher of the two standards of invasion of privacy, the release of this information also would be "unwarranted" as required by 5 U.S.C. § 552(b)(7)(C). <u>Id.</u>

### ii. Exemption 7(F)

FOIA Exemption 7(F) authorizes the withholding of:

> (7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information

> (F)    could reasonably be expected to endanger the life or physical safety of any individual.

5 U.S.C. § 552(b)(7)(F). Pursuant to Exemption 7(F), the Criminal Division's FOIA/PA Unit withheld from Item 23 the names of two DEA agents. <u>See</u> Roberts Decl., ¶ 32. The Criminal Division withheld the names of two DEA agents who were involved in the criminal investigation of Plaintiff. <u>Id.</u> at ¶ 33. These agents have a reasonable expectation of privacy in their identities. <u>See</u> <u>Id.</u> There is no indication that Plaintiff is aware of the names of these individuals. <u>Id.</u> Based on the nature of their work, it is reasonable to conclude that the release of their identities could expose them to physical harm from those outside of the law enforcement community. <u>Id.</u>

### 2.  <u>Plaintiff's Direct FOIA Requests to DOS</u>

### a. The State Department's Search for Responsive Records

The State Department's search for records responsive to Plaintiff's request was designed to uncover all responsive records. <u>See</u> Grafeld Decl., ¶ 11. When a FOIA request is received, the Office of Information Programs and Services ("IPS") evaluates the request and determines which offices, overseas posts, or other records systems within the Department may reasonably be expected to contain the information requested. <u>See id.</u> This determination is based on the description of records set forth in the request letter. <u>Id.</u> It also requires a familiarity with records system holdings, applicable records disposition schedules, and the substantive and functional

mandates of the numerous offices within the Department, as well as its Foreign Service posts and missions.  Id.  Such factors as the nature, scope, and complexity of the request itself also are relevant.  Id.

### i. Central Foreign Policy File

The records of the Department are maintained in both centralized and decentralized records systems.  Id. at ¶12.  The Central Foreign Policy File (or "Central File") is the Department's primary centralized records system and consists of both manual and automated file holdings.[8]  See id.  In this case IPS initially conducted a search of the automated holdings of the Central File for records using Plaintiff's name (Richard Isasi) since 1995, intending to identify any documents relating to Plaintiff.  See id. at ¶ 15-16.  This search yielded six documents; of these, four documents were released in full and two were withheld in part.  Id. at ¶ 16.  Subsequently, IPS discovered that Plaintiff used other known aliases, including Luis Martinez, George L. Ortiz, Veteran Falco, Luis Martino, and Richard Isasi Diaz.  Id. at ¶ 17.  Therefore, multiple searches of the automated holdings of the Central File were conducted for documents using these aliases since 1995.  Id.  No additional responsive documents were found.  Id.

### ii. Office/Post Files

Each office within DOS and each Foreign Service post also maintains active working files concerning foreign policy and other functional matters related to the daily operations of that office, post, or mission.[9]  Id. at ¶ 18.  In addition to the searches of the automated holdings of the Central File described above, searches were also conducted of the active working files of the Office of Mexican Affairs, and the Office of the Assistant Legal Adviser for Law Enforcement

---

[8] For a more detailed explanation on the Central File and its holdings, please see the declaration of Margaret Grafeld at paragraphs 12 through 14.

[9] These files consist generally of working copies of documents, information copies of documents maintained in the Central File, as well as other documents prepared by or furnished to the office, post, or mission in connection with the performance of its official duties.  Id. at ¶ 18.

and Intelligence (L/LEI).[10]  Id. at ¶ 19.  No additional responsive records were located in the

search of the active working files Office of Mexican Affairs.  See id. at ¶ 20.  The initial search of

L/LEI records resulted in no responsive records being located, but an additional search of L/LEI

records was conducted after the discovery of Plaintiff's other aliases, as described above, and the

results of the second search are described below, in the section concerning retired records.  See

id. at ¶ 21.  IPS also consulted with the U.S. Embassy in Mexico to determine whether any

responsive records remained at the Embassy.  Id. at ¶ 22.  Personnel stationed at the Embassy

reported that a search had been conducted of the files in the office that now handles extraditions

as well as the files of an office that had handled Plaintiff's extradition, and that no responsive

records were located.  Id.  Therefore, as described below, IPS reviewed the retired records

manifests and searched potentially relevant retired files of the Embassy.  Id.

### iii. Retired Office/Post Files

When records are no longer needed operationally by an office or post, which generally

takes place after two to three years, they are retired and stored at offsite storage facilities.  While

they remain under the control of DOS, IPS is generally responsible for conducting searches of

retired files in response to FOIA and other types of requests.[11]  Id. at ¶ 23.  In addition to the

searches described above, searches were also conducted of the retired records of the Office of

Mexican Affairs, the Political Section at the U.S. Embassy in Mexico, and the Office of the

Assistant Legal Adviser for L/LEI.  Id. at ¶ 24-25.[12]  IPS examined the retired records manifests

for records falling within the time period covered in Plaintiff's request for records retired by the

---

[10] For descriptions of the functions of those Offices, please see the declaration of Margaret Grafeld paragraphs 20 and 21.  The searches of these files were performed by individuals employed within those organizations who are familiar with the subject matter of Plaintiff's request and his known aliases, as well as the contents and organization of the records systems searched.  Grafeld Decl., ¶ 19.

[11] For more information regarding the contents, documentation, and screening of retired files, please see the declaration of Margaret Grafeld paragraph 23.

[12] The searches of those Offices were done by IPS analysts who are familiar with the contents and organization of DOS records, and who are familiar with the subject matter of Plaintiff's request.  See Grafeld Decl., ¶ 24-25.

Office of Mexican Affairs and relevant sections within the U.S. Embassy in Mexico.[13]  Id.  No

additional responsive records were located in these searches.  Id.  The search of L/LEI retired

files, when using Plaintiff's aliases, yielded eleven additional responsive documents; of these,

four were released in full, three were released in part, and four were referred to DOJ for its

review and reply directly to the requester.  Id. at ¶ 26.[14]

     The Department of State conducted an exceedingly thorough search, using not only the

name Plaintiff provided in his FOIA request ("Richard Isasi,"), but also various aliases that the

Department discovered.  See id. at ¶¶ 17, 19, and 21.  The Department of State searched both its

active and retired files, and searched both at home and abroad, for information responsive to

Plaintiff's request.   All in all, qualified Department personnel searched "all records systems

reasonably expected to contain the information sought by Plaintiff," Grafeld Decl., ¶ 54,

including records of the office that handles extraditions, the office that handles Mexican affairs,

the American Embassy in Mexico City, and the Department's massive Central Foreign Policy

File.  Consequently, although Plaintiff's initial requests and subsequent attempts at clarification

have been unclear at best, DOS has released documents that appear to correlate to what Plaintiff

requested where there is a reasonable possibility that DOS has such records at all.  See Grafeld

Decl. ¶¶ 27-30.

### b.  DOS Properly Applied FOIA Exemptions 5, 6, and 7(C)

### i.  Exemption 5

     The FOIA does not apply to:

---

[13] Relevant sections include the Embassy's Political Section, Executive Office, and Office of the Deputy Chief of Mission. See Grafeld Decl., ¶ 25.

[14] The search of L/LEI retired files was performed by individuals employed within that organization who are familiar with both the subject matter of Plaintiff's request and also the contents and organization of the records systems searched.  Id. at ¶ 26.

> Inter-agency or intra-agency memoranda or letters which would not
> be available by law to a party other than an agency in litigation with
> the agency…

5 U.S.C. § 552(b)(5).  This exemption protects, inter alia, the candid views and advice of U.S.

Government officials in their pre-decisional deliberations respecting policy formulation and

administrative direction.  See NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975); see

also Missouri ex rel. Shorr v. U.S. Army Corps of Eng'rs, 147 F.3d 708, 710 (8th Cir. 1998)

("The purpose of the deliberative process privilege is to allow agencies freely to explore

alternative avenues of action and to engage in internal debates without fear of public scrutiny.").

Disclosure of material containing such deliberations or of material on which such deliberations

are based would prejudice the free flow of internal recommendations and other necessary

exchanges.  Grafeld Decl., ¶ 41.  It would hamper the ability of responsible officials to formulate

and carry out executive branch programs.  Id.

Document J5 is a two-page typed, undated, unclassified document with extensive hand-

written comments that was referred to the DOS by the DOJ.  Id. at ¶ 37, 50.  This document

appears to be a draft of a diplomatic note to the Mexican government concerning Plaintiff's

extradition.  Id.  The document is heavily edited, replete with hand-written commentary and

interlineations in the text and in the margins, and with text crossed out.  Id.  The entire document

is a pre-decisional draft that constitutes part of the deliberative process of determining how to

effect an extradition and how to write a particular diplomatic note.  Id.  Disclosure of this

information, which is predecisional and contains selected factual material intertwined with

opinion, would inhibit candid internal discussion and the expression of recommendations and

judgments regarding current problems and preferred courses of action.  Id. at ¶ 41.  The withheld

information is, accordingly, exempt from release under FOIA exemption (b)(5).  There is no
factual non-deliberative material that may be segregated and released.  Id. at ¶ 50.

### ii.  Exemption 6 and Exemption 7(C)

The courts have interpreted the language of Exemption (b)(6), as set out above on page
20, broadly enough to encompass all information that applies to an individual without regard to
whether it was located in a particular type of file.  See U.S. Dept. of State v. Washington Post
Co. 456 U.S. 595, 599-603 (1982) (citing H.R. Rep. No. 89-1497, at 11 (1966); S. Rep. No.
89813, at 9 (1965); S. Rep. No. 88-1219, at 14 (1964)).  Inasmuch as the information withheld is
personal to an individual, there is clearly a privacy interest involved, and the agency must weigh
the extent of the invasion of privacy against the public interest in disclosure.  See Grafeld Decl.,
¶ 43.  In balancing, the agency must (1) examine whether disclosure would serve the "core
purpose" for which Congress enacted the FOIA, i.e., to show "what the government is up to,"
and consider that (2) public interest means the interest of the public in general, not particular
interest of the person or group seeking the information.  See U.S. Dept. of Justice v. Reporters
Committee for Freedom of the Press, 489 U.S. 749 (1989).  Accordingly, the identity of the
requester as well as the purpose for which the information is sought is irrelevant in evaluating the
public interest aspect of the disclosure determination.  Grafeld Decl., ¶ 44.

Document No. E2 is six-page DOS telegram No. 87918 to Embassy Mexico City, dated
April 11, 1995; it is the only DOS document being withheld solely under the authority of
Exemption (b)(6).  Grafeld Decl., ¶ 48.  The only information withheld in this document is the
name of a private individual who was the victim of a robbery at gunpoint.  Id.  Disclosure of this
information would constitute a clearly unwarranted invasion of that victim's personal privacy,
and the victim's identity does not shed any light on the government's activities.  See 5 U.S.C. §

552(b)(6); see also Reporters Committee, 489 U.S. at 775.  Accordingly, the privacy interest

clearly outweighs any public interest in disclosure of such personal information, and this

information is exempt from disclosure under FOIA exemption (b)(6).  See Dept. of the Air Force

v. Rose, 425 U.S. 352, 372 (1976); see also Grafeld Decl., ¶¶ 45, 48.

The information withheld by DOS under Exemption (b)(7)(C), as set out above on page

20, identifies law enforcement officials.  Grafeld Decl., ¶ 47.  In each instance where this

exemption has been asserted, Exemption 6 has also been asserted for the same information.

Document No. E3 is four-page Department of State telegram No. 31974 to Embassy Mexico

City, dated February 7, 1995, which has information being withheld under the authority of

Exemptions (b)(6) and (b)(7)(C).  Id. at ¶ 49.  The first redaction consists of the name of a

private individual who was the victim of robbery at gunpoint.  Id.  Disclosure of this information

would constitute a clearly unwarranted invasion of the victim's personal privacy, and the

victim's identity does not shed any light on the government's activities.  Id.  Accordingly, this

information is exempt from disclosure under FOIA exemption (b)(6).  Id.  The second redaction

is information that reveals the identity of DEA law enforcement agents working in Mexico.  Id.

Disclosure of this information would constitute an unwarranted invasion of their personal

privacy and would not shed additional light on the government's activities.  Id.  Accordingly, this

information is exempt from disclosure under FOIA exemptions (b)(6) and (b)(7)(C).  Because

only the names of individuals have been withheld from this document, there is no additional non-

exempt material that may be segregated and released.  Id.

Document L9 is a three-page "*acta de entrega*" in Spanish, signed by two FBI special

agents and by two officials of the Government of Mexico, dated September 3, 1995, which has

information being withheld under the authority of Exemptions (b)(6) and (b)(7)(C).  Grafeld

Decl., ¶ 52.  This document memorializes Plaintiff's transfer from the custody of Mexican officials to the custody of U.S. Government officials for transport to the United States.  Id.  The only redactions in this document are the names and titles of two FBI special agents who signed their names on the last page.  Id.  Disclosure of this information would constitute an unwarranted invasion of their personal privacy and would not shed additional light on the government's activities.  Id.  Accordingly, this information is exempt from disclosure under FOIA exemptions (b)(6) and (b)(7)(C). Id.  Because only the names and titles of individuals have been withheld from this document, there is no additional non-exempt material that may be segregated and released.  Id.

Document L2 is a one-page letter, in Spanish, from the Legal Adviser of the Consular Section of the U.S. Embassy in Mexico City to the Director of the Mexican Transport and Aeronautical Control, dated September 2, 1997, which has information being withheld under the authority of Exemptions (b)(6) and (b)(7)(C). Grafeld Decl., ¶ 51; see Roberts Decl., ¶ 26. Document L10 is a diplomatic note from the U.S. Embassy in Mexico City to the Mexican foreign ministry, dated April 10, 1995.  Grafeld Decl., ¶ 53; see Roberts Decl., ¶ 26.  This letter consists of four pages, with an attached informal translation in Spanish of five pages for a total of nine pages, and has information being withheld under the authority of Exemptions (b)(6) and (b)(7)(C). [15] Id.

In summary, DOS initiated and completed searches of all records systems reasonably expected to contain the information sought by Plaintiff.  Grafeld Decl., ¶ 54.  Seventeen responsive records were located.  Id.  Of these, eight documents were released in full, five were released with excisions, and four were referred to DOJ for its direct reply to Plaintiff.  Id.  In

---

[15] The justification for withholding information from Documents L2 and L10 were provided by Pamela A. Roberts, as set forth in her declaration.  See supra pg. 21.

addition, in response to different FOIA requests that Plaintiff submitted to DOJ, 28 Department

of State documents and four DOJ documents containing DOS information were referred by DOJ

to DOS for review.  Id.  Of these 32 documents, 24 were released in full, one was withheld in

full, three were determined to be outside the scope of Plaintiff's request, and the DOS had no

objection to the release of its information within the four DOJ documents.  Id.

### 3.  Plaintiff's FOIA Requests Referred to EOUSA

#### a.  EOUSA's Search for Responsive Records

On September 29, 2005, EOUSA received a Memorandum from the Criminal Division.

Supplemental Declaration of David Luczynski ("Luczynski Supp. Decl."), ¶ 4.  This

memorandum notified EOUSA that during processing of a request the Criminal Division has

come across records which originated in an office for which EOUSA is responsible.  Luczynski

Supp. Decl., ¶ 4.  As a result, 11 pages of records have been referred to the EOUSA for a direct

reply to the requester.  Id.  The processing of those records has been described in Mr.

Luczynski's prior declaration dated September 28, 2007.  Id.  Sometime thereafter, EOUSA was

notified that there may be several other aliases under which Plaintiff's records may have been

filed.  Id. at ¶ 5.  While records are not normally filed in such a manner, as a precautionary

measure EOUSA decided to search the Eastern District of New York under all possible names

relating to the Plaintiff.  Id.

On February 11, 2008, EOUSA contacted the FOIA contact for the Eastern District of

New York and requested an additional search for records, this time including all of Plaintiff's

known aliases.  Id.  at ¶ 6.  After receiving the request, the FOIA contact began a systematic

search for records relating to the Plaintiff to determine the location of any and all files relating to

his case.  Id.  at ¶ 7.  The result of the renewed search presented no additional records found in

the Eastern District of New York. Id. at ¶ 8; see Luczynski Supp. Exh. A. Each step in the handling of Plaintiff's request was entirely consistent with the EOUSA and the U.S. Attorney's Office procedures, which were adopted to insure an equitable response to all persons seeking access to records under the FOIA. Luczynski Supp. Decl., ¶ 9.

### b. EOUSA Properly Applied FOIA Exemption 6

Exemption (b)(6) permits withholding personnel, medical, and similar files, which if disclosed would constitute a clearly unwarranted invasion of personal privacy. See supra p. 20; Luczynski Decl., ¶ 8. This exemption has been interpreted broadly to qualify all information pertaining to a particular individual, and was applied to prevent disclosure of social security numbers, addresses, telephone numbers, and other highly personal material. See, e.g., DOD v. FLRA, 510 U.S. 487, 500 (1994) (home addresses); Singleton v. Executive Office for United States Attorneys, No. 05-2413, slip op. at 4 (D.D.C. Nov. 1, 2006) ("Disclosure of the [Assistant United States Attorneys'] home addresses would constitute a clearly unwarranted invasion of personal privacy."); Kidd v. Dep't of Justice, 362 F. Supp. 2d 291, 296-97 (D.D.C. 2005) (home telephone number); Peay v. Dep't of Justice, No. 04-1859, 2006 WL 1805616, at *2 (D.D.C. June 29, 2006) ("The IRS properly applied exemption 6 to the social security numbers of IRS personnel."). EOUSA either withheld in full or deleted information from the document released where names and identifying information pertains to persons whose right to personal privacy outweighs the public's right to know. Luczynski Decl., ¶ 9. Release of this information was determined to constitute a clearly unwarranted invasion of personal privacy of other third party individuals in a manner that could subject them to harassment. Id.

EOUSA categorically applied this exemption in conjunction with exemption (b)(7)(C) to all records pertaining to third party individuals to protect their personal privacy interests. Id. at ¶

10. The categorical application was appropriate because no consent or authorization to release this information was provided to EOUSA in connection with his request. Id. EOUSA applied this exemption to both pages that were redacted and released in part to the requester. Id. at ¶ 11. The only withholdings are comprised of identifying personnel numbers as well as telephone numbers. Id.

### c. EOUSA Properly Applied FOIA Exemption 7(C)

The pages EOUSA withheld were deemed exempt under FOIA Exemption (b)(7)(C), which protects from public disclosure information compiled for law enforcement purposes, if such disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy. See supra p. 20; Luczynski Decl., ¶ 12. All the information at issue was compiled for law enforcement purposes – namely, to facilitate the investigation and criminal prosecution of the Requester. Id. Exemption (b)(7)(C) was applied to the withheld records in an effort to protect the identity of third-party individuals, such as potential witnesses and law enforcement personnel, the release of which could subject such persons to an unwarranted invasion of their personal privacy. Id. at ¶ 13. Release of such personal identifiers could result in unwanted efforts to gain further access to such persons or to personal information about them – or subject them to harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences – all to their detriment. Id.

Consequently, EOUSA determined that such information is exempt from disclosure under Exemption (b)(7)(C), and that there was no countervailing public interest in the release of this privacy-protected information, because its dissemination would not help explain government activities and operations or outweigh third-party individuals' privacy rights in the information withheld under this exemption. Id. at ¶ 14. Moreover, no third-party individual provided

authorization or consent to disclose such information.  <u>Cf</u>. 5 U.S.C. § 552a(b) ("No agency shall disclose any record . . . contained in a system of records . . . except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains" unless otherwise authorized by law); <u>Id</u>.  The two pages of documents redacted under this exemption are the same as the ones redacted under Exemption (b)(6)**.**  The only redactions are names of third party individual(s).  <u>Id.</u> at ¶ 15.

Although not strictly required in this case, the EOUSA also concluded that these documents were not subject to release under the Privacy Act.  See Luczynski Decl., ¶ 7.

### 4. <u>OLC Properly Applied FOIA Exemption 5 to Plaintiff's FOIA Requests Referred by the DOJ Criminal Division</u>

On September 27, 2005, the DOJ Criminal Division referred to the OLC one document that originated with OLC but that the Criminal Division located in its files while processing Plaintiff's FOIA request.  Declaration of Paul P. Colborn ("Colborn Decl.), ¶ 3.  The referral totaled sixteen pages, and it consisted of two one-page transmittal memoranda and a fourteen-page draft legal opinion prepared by the OLC for the DOJ Criminal Division.  Colborn Decl., ¶ 3.  Upon re-review the referred document, the OLC determined that the two transmittal memoranda are appropriate for discretionary release, and it released them to Plaintiff on March 14, 2008.  <u>Id.</u>

The fourteen-page draft legal opinion addresses legal issues raised by the possible extradition of a United States citizen imprisoned in Mexico to the United States to stand trial for a crime committed in the United States.  Id. at ¶ 4.  OLC prepared the memorandum in the course of providing legal advice to the Criminal Division, and the memorandum reflects confidential information received from the Criminal Division.  <u>Id.</u>  In particular, the draft opinion addresses issues concerning the possibility of returning the prisoner to Mexico to complete his Mexican

prison sentence following his anticipated trial in the United States.  Id.  The face of the document

clearly indicates that it is a pre-decisional, non-final draft.  Id.  It is labeled "Draft," is dated

March 29, 1996, and, on a few pages, contains handwritten notes and marginalia.  Id.  It is

addressed to Mark M. Richard, then a Deputy Assistant Attorney General for the Criminal

Division, and it is entitled, "Return Extradition/ Mexico."  The "From" line of the document is

blank.  Id.

     The OLC properly withheld the entire draft legal opinion because it is protected by FOIA

Exemption 5.  This exemption protects from disclosure "inter-agency or intra-agency

memorandums or letters which would not be available by law to a party other than an agency in

litigation with the agency."  See 5 U.S.C. § 552(b)(5).  It has been construed to exempt those

documents or information normally privileged in the civil discovery context, including

documents protected by the two privileges relied upon by OLC in withholding the referred

document, the deliberative process and attorney-client privileges.  See NLRB v. Sears, Roebuck

& Co., 421 U.S. 132, 149 (1975); see FTC v. Grolier Inc., 462 U.S. 19, 26 (1983); Martin v.

Office of Special Counsel, 819 F.2d 1181, 1184 (D.C. Cir. 1987); see also Colborn Decl. ¶ 7.

The deliberative process privilege protects the internal deliberations of the Government by

exempting from release under FOIA recommendations, analysis, opinions, speculation and other

non-factual information prepared in anticipation of decisionmaking.  Id. at ¶ 8.  Similarly, the

attorney-client privilege protects confidential communications between an attorney and his client

relating to a legal matter for which the client has sought advice.  Id.

     The draft legal opinion falls squarely within the deliberative process and attorney-client

privileges.  Id. at ¶ 9.  As discussed above, OLC prepared the document for the purpose of

providing confidential legal advice to its client, the Criminal Division, about the possible

extradition of a United States citizen from Mexico.  Id.  The draft legal document reflects

confidential information that OLC received from the Criminal Division for the purpose of

preparing its legal advice.  Id.  Moreover, OLC prepared the document with the expectation that

it would be held in confidence, and, to the best of OLC's knowledge, it has been held in

confidence.  Id.

The document is also clearly pre-decisional.  Id. at ¶ 10.  As explained above, the

document is a non-final draft reflecting preliminary legal advice about an action contemplated —

but not yet taken — by the Executive Branch.  Id.  Creating and sharing documents like the draft

legal opinion is an integral part of deliberations within OLC, the DOJ, and the Executive Branch.

Id.  Indeed, as a matter of Office policy, OLC attorneys exchange draft documents with others in

DOJ for comments, edits, and suggestions (as the transmittal memoranda indicate occurred in

this case).  Id.  Inevitably, initial drafts of documents differ substantially from the final versions,

as attorneys adjust their analysis in response to input from their colleagues.  Id.

Compelled disclosure of this advisory and pre-decisional draft legal opinion would cause

serious harm to the deliberative processes of the OLC and the Department of Justice, and would

disrupt the attorney-client relationship between OLC and other components in the DOJ and other

entities in the Executive Branch.  Id. at ¶ 11.  Attorneys in OLC are often asked to provide advice

and analysis with respect to very difficult and unsettled issues of law.  Id.  Frequently, such

issues arise in connection with highly complex and sensitive operations of the Executive Branch.

Id.  It is essential to the mission of the Executive Branch that OLC legal advice, and the

development of that advice, not be inhibited by concerns about public disclosure.  Id.  Protecting

the confidentiality of documents such as the draft legal opinion is essential in order both to

ensure that creative and even controversial legal arguments and theories may be examined

candidly, effectively, and in writing and to ensure that other components of the Executive Branch

and the DOJ will continue to request legal advice from OLC on such sensitive matters.  Id.

### B. All Reasonably Segregable Material Has Been Released to Plaintiff.

The FOIA requires that if a record contains information that is exempt from disclosure,

any "reasonably segregable" information must be disclosed after deletion of the exempt

information unless the non-exempt portions are "inextricably intertwined with exempt portions."

5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566 F.2d 242,

260 (D.C. Cir. 1977).  The Court of Appeals for the District of Columbia Circuit has held that a

District Court considering a FOIA action has "an affirmative duty to consider the segregability

issue sua sponte."  Trans-Pacific Policing Agreement v. United States Customs Serv., 177 F.3d

1022, 1028 (D.C. Cir. 1999).

In order to demonstrate that all reasonably segregable material has been released, the

agency must provide a "detailed justification" rather than "conclusory statements."  Mead Data,

566 F.2d at 261.  The agency is not, however, required "to provide such a detailed justification"

that the exempt material would effectively be disclosed.  Id.  All that is required is that the

government show "with 'reasonable specificity'" why a document cannot be further segregated.

Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

Moreover, the agency is not required to "commit significant time and resources to the separation

of disjointed words, phrases, or even sentences which taken separately or together have minimal

or no information content."  Mead Data, 566 F.2d at 261, n.55.

Given the nature of the Department of State's withholdings — which consist only of

personally identifying information (primarily names) and a draft document — it is clear that the

Department of State has properly analyzed these documents and determined that no additional

26

non-exempt material can be segregated and released.  Grafeld Decl. ¶¶ 49, 50, 52, and 54.

Armstrong, 97 F.3d at 578-79.  Additionally, a review of Ms. Roberts' declaration reveals that

DOJ carefully reviewed the information and confirms that all reasonably segregable non-exempt

material has been released.  Roberts Decl., ¶ 34.  A review of Mr. Luczynski's declaration also

reveals that EOUSA carefully reviewed the information and confirms that all reasonably

segregable non-exempt material has been released.  Luczynski Decl., ¶ 16.  Moreover, a review

of Mr. Colborn's declaration reveals that the OLC carefully reviewed the information and

confirms that there is no segregable non-exempt material that can be released.  Colborn Decl., ¶

12.[16]

## III.  PLAINTIFF'S CONSTITUTIONAL CLAIMS

### A.  Bivens-type claims may not arise from allegations of FOIA violations

To the extent that Plaintiff's complaint, as supplemented, may be read as seeking relief

from any defendant for an alleged violation of constitutional rights for failure to comply with the

FOIA, it fails. FOIA is a comprehensive statutory scheme to resolve all issues associated with

the release of government documents.  Harrison v. Lappin, Civil Action No. 04-0061(JR), at 3

(D.D.C. Mar 31, 2005); Johnson v. Executive Office for United States Attorneys, 310 F.3d 771,

777 (D.C. Cir. 2002).  With an extensive and detailed process available to requesters under

FOIA, courts have concluded that a Bivens-type remedy is not appropriate.  Harrison, No. 04-

0061(JR) at 3; Johnson, 310 F.3d at 777; see Spagnola v. Mathis, 859 F.2d 223, 228 D.C. Cir.

1988) (en banc) (no Bivens remedy available if a statute provides a "comprehensive system to

administer public rights").  Furthermore, to the extent Plaintiff seeks to hold any individual

---

[16] To the extent that Plaintiff's complaint seeks money, compensatory, and punitive damages for his FOIA violation
claims, it fails.  The FOIA does not authorize any award of monetary damages to a requester for an agency's
unjustified refusal to release requested records.  See Eltayib v. U.S. Coast Guard, 53 F. App'x 127, 127 (D.C. Cir.
2002) (declaring that the FOIA "does not authorize the collection of damages"); See also Schwartz v. U.S. Patent &
Trademark Office, No. 95-5349, 1996 U.S. App. LEXIS 4609, at *2-3 (D.C. Cir. Feb. 22, 1996).

government employee liable, individuals are not proper parties to civil actions under FOIA.

Harrison, No. 04-0061(JR) at 3; See Stone v. FBI, 816 F.Supp. 782, 785 (D.D.C. 1993)

(individual employees of the federal government are not subject to suit under FOIA).

**B. Section 1983: Plaintiff's § 1983 Cause Of Action Fails To State A Claim Upon Which Relief May Be Granted**

Although not identified as a separate count, Plaintiff alleges that Defendants' actions

violated 42 U.S.C. § 1983.  See Compl. ¶ 26.  Plaintiff's reliance on Section 1983 is legally

misplaced.  "Section 1983 provides that every person who, under color of law 'of any State or

Territory or the District of Columbia,' deprives another of constitutional rights 'shall be liable to

the party injured.'" 42 U.S.C. § 1983; see also Gray v. Poole, 243 F.3d 572, 574 n.2 (D.C. Cir.

2001).  "The traditional definition of acting under color of state law requires that the defendants

in a §1983 action have exercised power 'possessed by virtue of state law.'"  Williams v. United

States, 396 F.3d 412, 414 (D.C. Cir. 2005).  As such, in Section 1983 cases, courts have "focused

on whether [the] defendants are state officials or have conspired with state officials in

committing illegal acts."  Id.

Here, Mr. Isasi's verified Complaint fails to show that the individual defendants in this

case acted under color of state law or that they are state officials.  In fact, the individuals

identified in Mr. Isasi's Complaint are all federal officials within the DOJ and DOS.  See Compl.

¶ 27.  Accordingly, the Court should dismiss Mr. Isasi's Section 1983 claim as legally

deficient.[17]

**IV.  PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

---

[17] In his Complaint, Plaintiff cites 28 U.S.C. §§ 2283-84, which are entitled *Stay of State court proceedings*, and *Three-judge court; when required; composition; procedure*, respectively.  These sections of the United States Code are unhelpful to Plaintiff's complaint, as well as irrelevant to the case at bar.  Any relief sought based upon this authority should be denied.

On February 28, 2008, Plaintiff filed a Motion Order to Show Cause for Preliminary Injunction and Temporary Restraining Order [sic] (hereinafter "PI/TRO Motion"). <u>See</u> Dkt. Entry 40. Since at least 2004, Plaintiff has resided at Attica Correctional Facility, a state prison in New York. <u>See</u> Pl. Summons; <u>see also</u> PI/TRO Motion, ¶ 5. Plaintiff alleges that in 2004 and 2007, he had one case pending at the U.S. Court of Appeals for the Second Circuit, and a third case pending at the District Court for the Western District of New York in 2007. <u>See</u> PI/TRO Motion, ¶ 2-5, 8, and 9. Plaintiff further alleges that during each of these cases, he was prevented from receiving mail from the courts. <u>See id.</u> at ¶ 5, 8, and 9. None of the cases mentioned by that Plaintiff are, or relate to, the case at bar.

Plaintiff's new claims should be dismissed. Plaintiff resides at a state prison facility, where he is guarded by state prison officials. In the present case, Plaintiff named defendants who are current and former employees of federal agencies, and their work deals largely with FOIA concerns. Plaintiff's claims should be brought in a completely separate action, because any parties that could respond to Plaintiff's claims appropriately are not involved in this case and would need to be joined as additional defendants in this matter.[18]

Plaintiff's claims should also be dismissed because the relief requested bears no resemblance to those relating to Plaintiff's claim under FOIA. Defendants have spent months searching for files that are responsive to Plaintiff's FOIA requests, as well as reviewing files for release to Plaintiff. However, in his most recent motion Plaintiff claims only generally that Defendants "and State Officials removed the Plaintiffs from Attica Correctional Facility" to New Jersey and back to Attica in August 2004, and that he did not receive mail until he returned to Attica in November 2004. <u>See</u> PI/TRO Motion, ¶ 5-6. Plaintiff moved for an order to show

---

[18] Moreover, to the extent those persons are in New York State, this Court would likely lack personal jurisdiction over them.

cause for such actions, but the Motion and the claims therein have nothing to do with the present

case.  Plaintiff should bring these claims in a new action, and address them to authorities that

may provide Plaintiff with the additional relief he seeks.

## **CONCLUSION**

For all of the foregoing reasons, this action should be dismissed.  Alternatively,

Defendants request entry of summary judgment.


Respectfully submitted,


_____/s/_____
JEFFREY TAYLOR, D.C. BAR # 498610
United States Attorney



_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney



_____/s/_____
BRANDON L. LOWY
Special Assistant United States Attorney
555 4th Street, N.W.   Rm. E-4405
Washington, D.C. 20530

Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of March, 2008, I caused the foregoing Defendants'

Motion to Dismiss, or in the Alternative, for Summary Judgment, proposed Order, and

Opposition to Plaintiff's Motion for Order to Show Cause for Preliminary Injunction and

Temporary Restraining Order to be filed via the Court's Electronic Case Filing system, and

served upon Plaintiff, *pro se*, by first-class mail, postage prepaid, addressed as follows:

RICHARD ISASI
# 98A1899
ATTICA CORRECTIONAL FACILITY
P.O. Box 149
Attica, NY 14011-0149



          /s/   *Brandon L. Lowy*
          BRANDON L. LOWY

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RICHARD ISASI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 1:06-cv-02222 (RBW) |
| | ) | |
| PRISCILLA JONES et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## <u>ORDER</u>

Upon consideration of Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment and Opposition to Plaintiff's Motion for Order to Show Cause for Preliminary Injunction and Temporary Restraining Order, and the entire record of this case, it is hereby

_____ ORDERED that Defendant's Motion to Dismiss is GRANTED. It is FURTHER ORDERED that Plaintiff's Motion for Order to Show Cause for Preliminary Injunction and Temporary Restraining Order is DENIED. Plaintiff's Complaint is DISMISSED

_____ ORDERED that Defendant's Motion to Dismiss is DENIED and Plaintiff's Motion for Summary Judgment is GRANTED. It is FURTHER ORDERED that Plaintiff's Motion for Order to Show Cause for Preliminary Injunction and Temporary Restraining Order is DENIED. Plaintiff's Complaint is DISMISSED.

Dated this _____ day of _____, 2008.

_____
United States District Judge