United States District Court
For the District of Columbia

RECEIVED

MAY 1 2 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Richard Isasi,
          Plaintiff


          v.                          Civil Action
                                      #06-2222(RBW)


Priscilla Jones, et al.,
               Defendants


Memorandum of point and authorities in opposition of the defen-
dants' motion to dismiss, or in alternative, for summary judg-
ment,  Plaintiff's Motion for Partial Summary Judgment

## INTRODUCTION

Plaintiff filed this pro se action against the defendants
who violated plaintiff's federal rights under the Freedom of
Information Act, FOIA, 5 USC 552.  Defendants still refused to
release or produce plaintiff requested documents pertaining to
extradition from Mexico to the United States on September 3, 1997.

Pursuant to the Freedom of Information Act FOIA dated March 31,
2003, plaintiff filed a request with the Office of the Criminal
Division of the Department of Justice, DOJ, and pursuant to the
Freedom of Information Act dated February 12, 2003, plaintiff
filed a request with the United States Department of State, DOS.

Plaintiff has exhausted administrative remedies as prerequi-
site to the institution of suit.  Defendants' failure to comply
within the time limits request must be made available  5 USC  552
(a)(6)(4)(i) and (ii) was sufficient to meet plaintiff's burden
of demonstrating the entitlement to judgment as a matter of law
on the issue of liability.  Thereby shifting the burden to defen-
dant to tender sufficient admissible proof to raise a question

of fact in this regard.

Defendants' failure to produce evidence or documentation to state a claim upon which relief could be granted and his motion to dismiss pursuant to Rule (b)(6), should be denied.

Plaintiff Richard Isasi is an inmate confined at Attica Correctional Facility, State prison of New York.

### Bivens Claim

Defendant counsel arguing plaintiff's claim against all of the defendants should be dismissed because this count lacks subject matter jurisdiction pursuant to Fed. R. Civ. Procedural Rule 12(b)(1), "because none qualify as an agency under FOIA," and because the agencies have completed processing the FOIA request at issue such that the plaintiff's claim fails to state a claim upon which relief can be granted. The court should dismiss plaintiff's case with prejudice under Fed. R. Civ. Procedural Rule 12(b)(6). See Motion to Dismiss or in the alternative for summary judgment MTD/MSJ, introduction p. 2.

The relevant venue provision for a claim under FOIA is found at 5 USC  552a(g)(5), which provides that the proper venue for an action brought under the Act is "the district in which the complaintant resides, or has his principal place of business, or in which the agency records are situated or in the District of Columbia" 5 USC  552a(g)(5), since the records plaintiff is seeking are 'situated' in the District of Columbia, the proper venue for this action is the District of Columbia. See: Transfer Order, Eastern District of New York, United States Magistrate Judge Bloom, dated November 6, 2006. Defendant counsel argument is the subject matter of jurisdiction is not sustained because defendants failed to produce the records requested under the Freedom of Information Act FOIA. The defendants motion pursuant to Fed. R. Civ. Procedural Rule 12(b)(1) should be denied.

The Federal jurisdiction was claimed, inter alia, under 28 USC 1331. Bivens v. Six Unknown Federal Narcotics Agents, 403 US 384(1971). The District Court interpreted the complaint as an action, permitting a suit for deprivation of constitutional rights against a federal government official acting under color of federal law on behalf of the United States.

The District Court shall have jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value or $10,000.00, exclusive of interest and costs, and raised question under Constitution, law, or treaties of the United States.

On August 20, 2004, Assistant United States Attorneys, counsel for the federal defendants, appealed before the United States Court of Appeals for the Second Circuit. See: Isasi V. US Governor 04-0629 PR. Defendants's counsel brief, stated the following:

Despite the Supreme court's recognition that claims against individual federal employees for constitutional violations may be implied under the constitution. See: Bivens v. six unknown federal narcotics agents 403 US 388(1971). It has also made clear that such claim may not be asserted against agencies of the federal government. See: Meyer 570 US at 486 ["An extension of Bivens to agencies itself, we therefore hold that Meyer had no Bivens cause of action for damages against FSLIC"]. Moreover, the plaintiff cannot assert a Bivens claim and state claim against the US Agency defendants because only individual federal employees, not federal agencies, can be sued under Bivens. See Exhibit A, p. 6 and p. 7.

Here in the presented case, defendant's counsel asked this court to dismiss plaintiff's Bivens claim against all defendants because the court lacks subject matter jurisdiction over these defendants because none qualify as an Agency under FOIA, and because the agencies have completed processing the FOIA request at issue, such that the plaintiff claims are moot. For these same reasons, plaintiff fails to state claim upon which relief can be granted, such that the court should dismiss the case with prejudice under Fed. R. Div. Procedural Rule 12(b)(6). See Motion

to dismiss, or in the alternative for summary judgment, intro-
duction, p. 2.


A.  The Department of Justice, DOJ, and the United States Depart-
ment of State, DOS, refusing to release plaintiff request

1.  The Department of Justice, DOJ, and the US Department of State,
DOS, release no include "none" any document of plaintiff's extra-
dition proceeding in the Court of Mexico.
2.  The Department of Justice and the US Department of State release
no include "none" extradition order by the Mexican judge signed
by plaintiff.
3.  The Department of Justice and the US Department of State
release no include "none" the Executive Order #11517.
      This defendant's failure to do so, not producing evidence or
documentation request will be a failure to state a claim on the
issue of liability and plaintiff is entitled to judgment as a mat-
ter of law, demonstrates that there is a genuine issue of material
fact.  Therefore, defendant's motion to dismiss under Fed. R. Civ.
Procedural Rule 12(b)(1) and (6) should be denied with prejudice.


B.  Defendants' request for dismissal should be denied.
      Defendants on a motion to dismiss for failure to state a
claim  upon which relief can be granted pursuant to Rule 12(b)(6),
should be denied because the defendants failed to produce evi-
dence or documents requested.


                          CONTENTION

      Plaintiff contends that while pro se status does not exempt
a litigant from compliance with relevant procedural rules or re-
lieve him from the application of governing substantive law and
that this complaint "must contain specific negations of fact which
indicate a deprivation of constitutional rights.  However, (a)
complaint should not be dismissed for failure to state a claim

unless it appears beyond doubt that the plaintiff can prove a set of facts in support of his claim(s) which would entitle plaintiff for relief." CF, e.g., <u>Sims v Artuz</u> 230 F. 3d 14, 20 (2d Cir. 2000); <u>Flaherty v. Long</u> 199 F. 3d 607, 612 (2d Cir. 1999). <u>As the Second Circuit has reminded with greater force where the complain is submitted pro se or the plaintiff alleges civil rights violation.</u> (id) See also, <u>Baker v. Cuomo</u> 58 F. 3d 814 (2d Cir. 1995).

Defendants still refuse to release plaintiff's documents. The defendants filed motion of dismissal of the complaint under Rule 12(b)(6), or in the alternative, summary judgment and that motion was accompanied by affidavits with affidavit of his own.

## C. Summary Judgment Verified Complaint

The District Court should have been considered plaintiff's verified complaint on the motion for summary judgment.

Rule 56 contemplates that the summary judgment motion shall be accompanied and opposed by "[S]upporting and opposing affidavits.....made on personal knowledge, [which] shall set forth such fact as would be admissible in evidence...." Fed. R. Civ. Proc. 56(e). See <u>Neal v. Kelly</u> 963 F. 2d 457. Plaintiff's verified complaint is defined as [c]onfirmation of correctness, truth, or authenticity, by affidavit, oath, or deposition." Plaintiff's verified complaint under the statutory substitute for the taking of an oath, declaring "under penalty of perjury that the foregoing is true and correct," and dating a signature. See 28 USC 1746(1)(1991). Thus, the complaint was verified and constituted an affidavit. Every circuit that has faced this issue has then verified complaints as acceptable opposition to a motion under Rule 56 for summary judgment, as the First Circuit has stated :

We think the better rule is that a verified complaint ought to be treated as the functional equivalent of an affidavit to the extent that it satisfies the standards explicated in Rule 56(e) See <u>Sheinkopf v. Stone</u> 927 F.2d. 1259, 1262 (1st Cir, 1991)(Cit-

ations omitted).  Other circuits are in accord.  The Fifth, Sixth, Seventh and Ninth Circuits have all held as well that a verified pleading functions as an affidavit when it meets the standards or Rule 56(e).  <u>Lodge Hall Music, Inc. v. Waco Wrangler Club Inc.</u>, 831 F. 2d 77, 80 (5th Cir 1987); <u>Fowler v. Southern Bell Telephone & Telegraph Co</u>.  343 F. 2d 150, 154 (5th Cir 1965).

Plaintiff's complaint has been verified because it is based on personal knowledge and set forth specific facts admissible in evidence it may be considered in opposition to summary judgment. <u>See</u>: <u>McElyea v. Babbitt</u>, 833 F. 2d 196, 197-98(9th Cir, 1987) See Local Civil Rules 7(h) and Fed. R. Civ. Proc. 56(e).

Plaintiff is asking the court to enter summary judgment in plaintiff's favor pursuant to Fed. R. Civ. Proc. Rule 56, on the grounds that there is a genuine issue for trial, if the adverse party does not so respond to summary judgment.

Respectfully Submitted,

Richard Isasi, pro se

Dated May ___8___, 2008
New York, NY

United States District Court
For the District of Columbia

_____

Richard Isasi,
                Plaintiff


        v.                                    Civil Action
                                              #06-2222(RBW)

Priscilla Jones, et al.,
                Defendant

_____


Statement of material facts as to which it is contended that there
exists a genuine issue to be tried.

        Defendants have moved for summary judgment on the plaintiff's
claim concerning under the Freedom of Information Act FOIA 5 USC
   552.  Pursuant to the LCVR 7(h) of this court, the plaintiff
submits the following list of genuine issues of material fact
that require the denial of the defendant's motion.


1.  Defendants are not entitled to judgement as matter of law on
    Plaintiff's FOIA claims.

        The Department of Justice DOJ and the US Department of State
DOS both agencies have been requested early 2003, pursuant to the
Freedom of Information Act FOIA 5 USC  552. At the present time
both agencies still refuse to release or produce all the records.
The early release by both agencies no include any document of the
plaintiff extradition proceeding in the Mexican court, also no
include extradition order by the Mexican Judge signed by plaintiff
and also no include the Executive Order No. 11517.  More than 20
documents have been withheld under different FOIA exemption (b)(2),
(5),(6),(7), without any list of title of the documents withheld.

They took more than five years for both agencies for release
in part the documents request and for administrative appeals,
with plaintiff case.  Defendant's failure to comply with the time
limits request available under 5 USC  552(a)(4)(i) and (ii).
There exists a genuine issue to be tried.

2.  There are genuine issues of material fact that preclude sum-
mary judgment for the defendants on the plaintiff's due process
claim, extradition from Mexico.

Summary judgment is to be granted only if the record before
the court shows "that there is no genuine issue as to any material
fact and that the moving party is entitled to a judgment as a
matter or law".  Rule 56(c), Fed. R. Civ. P. *2.*

The Department of Justice and the United States Department
of State on behalf of the United States, introducing defective
documents in an international agreement, without any evidence
offered in extraditon case that must be legally authenticated
as admissible in the United States jurisdiction by forcible ab-
duction in violation of a treaty.  Here a treaty of the United
States is directly involved, and the question is quite different.
a.)  The Fourth Amendment to the United States Constitution pro-
vides that: "The right of the people to be secure in their per-
sons, houses, papers, and effects, against unreasonable searches
and seizures, shall not be violated, and no warrants shall issue
but on probable cause supported by oath or affirmation, and par-
ticularly describing the place to be searched, and the persons
or things to be seized."
b.)  The Fourteenth Amendment to the United States Constitution
provides that   1.  "All persons born or naturalized in the
United States, and subject to the jurisdiction thereof, are cit-
izens of the United States of the State wherein they reside.  No
State shall make or enforce any law which shall abridge the pri-
vileges or immunities of citizens of the United States, nor shall
any State deprive any person of life, liberty, or property, with-
out due process of law nor deny to any person within its juris-
diction the equal protection of the laws."

Motion to dismiss, or in the alternative, for summary judgment, Fed. R. Civ. Pro. Rule 12(b)(6), 56 USCA, never, can    challenge issues involved the United States Constitution Amendment and much less, the Treaty of the United States.

The affidavit of the plaintiff shows material issue, there is clearly a genuine issue of fact.

<u>Conclusion</u>

For the foregoing reasons, the defendants' motions for summary judgment should be denied.

Respectfully Submitted,


Richard /Isasi, pro se

Dated May___𝒳___, 2008
New York, NY

# CERTIFICATE OF SERVICE

Richard Isasi.

Plaintiff

v.

Priscilla Jones. et. al.

Defendant.

Docket No. 06-2222 (RBW)

I, ___Richard Isasi___ , hereby certify

under penalty of perjury that on ___May___ ___8___ , ___2008___ , I

served by United States Mail a copy of ___Memorandum of Point in Opposition___

___to Defendants Motion to Dismiss. Plaintiff's Motion for Partial Summary Judgment W/ Exhibit "A to G"___

and ___Served By The Attica Legal Mail System___ at:

___Brandon L. Lowy___ ,

___Special Assistant United States Attorney___

___555 Fourth Street. NW. Room E-4405___

___Washington. &C. 20530.___

Address

___R Isasi___

Signature

United States District Court
for the District of Columbia

---

Richard Isasi,
        Plaintiff

    v.

Priscilla Jones, et al.,
        Defendants

Civil Action
#06-CV-2222(RBW)

---

Declaration in support of Plaintiff's motion for partial summary judgment

1. I am the plaintiff in this action, the complaint alleged that I was denied pursuant to Freedom of Information Act FOIA 552, access to documents pertaining to extradition from Mexico to the United States in September 3, 1997, and the United States abducted the plaintiff in violation of the treaty terms. Extradition Treaty, May 4, 1974, [1979] United States-United Mexican States, 31 UST 5059 TIAS, No. 9656. [Extradition Treaty] Plaintiff was convicted of serious charges without the due process law.

I submit this declaration in support of my motion for partial summary judgment on my claim. The defendants denied the records pursuant to the Freedom of Information Act FOIA and my claim of abduction in violation of the Treaty terms between the United States and United Mexican States. (I have not moved for summary judgment on all aforementioned claims because there are clear factual disputes concerning them.)

2. I am an inmate at Attica Correctional Facility, New York, NY. On March 30, 1998, plaintiff was sentenced to a prison term of 170 years to life.

3. On February 9, 1995, plaintiff was illegally arrested in
Vera Cruz, Mexico,by Mexican police, without probable cause and
taken to the court before the Mexican judge. Plaintiff main-
tains a <u>Bivens</u> claim against the United States violated plaintiff
Constitutional rights protecting citizens under the Fourth and
Fourteenth Amendments of the United States Constitution. The
Constitution provides "the right of the people to be secure in
their persons, houses, papers and effects against unreasonable
searches and seizures shall not be violated and not warrants
shall issue, but on probable cause, supported by oath or affir-
mation, and particularly describing the place to be searched,
and the persons or things to be seized. See: <u>Exhibit B</u> request
for provisional arrest in Mexico, February 21, 1995, on behalf
of the State of New York and February 6, 1995, on behalf of the
State of New Jersey, both signed by Eric Friedberg, Chief, Nar-
cotics Unit, Eastern District of New York.

4. Michael Heineman, trial attorney, Criminal Division, United
States Department of Justice, Office of International Affairs,
admits his responsibility for the Richard Isasi/Luis Martinez
case from the time it was received until he was extradited,
must had to response before this court for their action in behalf
of the United States the introduction of the defective papers.
See: <u>Exhibit C</u>. Plaintiff maintains a <u>Bivens</u> claim and states a
claim against Michael Heineman on behalf of the United States
violated the plaintiff the Fourth and Fourteenth amendments of
the United States Constitution.

5. Richard Gonzales, on behalf of the United States Embassy in
Mexico on April 6, 1995, upon receipt of the documents is asked
to make a formal request for the extradition of plaintiffs.
Plaintiff maintains and states a <u>Bivens</u> claim against Richard
Gonzales on behalf of the United States Embassy in Mexico violated
the plaintiff's Fourth and Fourteenth amendments. Richard Gonzales
should be responsible before this court the introduction of defec-
tive papers in the formal request for the plaintiff's extradition.

Extradition Treaty, May 4, 1974 (1979), United States -- United Mexican States.  31 UST 5059.  TIAS No. 9656 (Extradition Treaty). See: Exhibit D

6.  On September 3, 1997, plaintiff was transported by Mexican officials to the International Airport, 'Heriberto Corona', Vera- cruz, Mexico, to accomplish the international extradition to the United States.  Plaintiff's surrender to the FBI agents who trans- ported the plaintiff from Veracruz, Mexico, to Webb, Texas, and placed the plaintiff in custody of Webb, Texas, County Jail. Plaintiff maintains and states a Bivens claim against the Federal Bureau of Investigation violated plaintiff's Fourth and Fourteenth Amendments of the United States Constitution, in abduction of of violation of the Treaty terms, United States Extradition Treaty, May 4, 1974 (1979), United States, United Mexican States, 31 UST 5059, TIAS, No. 9656 (Extradition Treaty).  See: Exhibit E.

7.  On September 4, 1997, plaintiff was removed from Webb, Texas, County Jail by  two (2) Texas Rangers who transported the plain- tiff to the same private airport by which he arrived where three US Marshals Service agents took plaintiff in custody and delivered plaintiff by plane to the State of New Jersey and then to the State of New York to the New York City line without waiver extra- dition.  Plaintiff states and maintains a Bivens claim against the US Marshals Services violated plaintiff's rights, the Fourth and Fourteenth Amendments of the United States Constitution in abduction and violation of the Interstate Agreement of Detainer. See: Exhibit F, p. 41, 42 and 46.  Question and answer.

8.  On September 9, 1996, the Office of the Attorney General of the United States addressed a letter to the Honorable Antonio Lozano Gracia, Attorney General of the Republic of Mexico where former Attorney General Janet Reno properly admitted and signed the following:

   "From our continuing consultation on the Martinez matter, we also understand that your government may have some lingering

concerns about the ability of the United States to provide re-
ciprocal assistance in similar circumstances.  It is true that
we are not able to undertake an absolute.

When an extradition treaty is in effect, ker is inapplicable,
also the treaty warranties the following: When an individual was
extradited to this country, "he came to this country clothed with
the protection which the nature of such [extradition] proceeding
and the true construction of the treaty gave him.

Plaintiff states and maintains a Bivens claim against the
United States violated the Fourth and Fourteenth Amendments of
the United States Constitution, denied plaintiff all the protec-
tion of such nature extradition, and in abduction of violation
of the Treaty terms, United States Extradition Treaty, May 4, 1974,
(1979), United States Mexican States 31 UST 5059, TIAS No. 9656
[Extradition Treaty or treaty]  See: Exhibit G.

For the foregoing reasons, the court should grant partial
summary judgment on liability to the plaintiff on his due process
claim. The amount of damages due to the plaintiff must be determined
at trial.  Patterson v. Coughlin  905 F. 2d 564, 570 (2d Cir. 1990).


Pursuant to 28 USC  1746, I declare under penalty of perjury
that the foregoing is true and correct.



                              Respectfully Submitted,


                              _____
                              Richard Isasi, pro se

Dated, May    8    , 2008
New York, NY

Exhibit A

# 04-0629-pr

## United States Court of Appeals
### For the Second Circuit

RICHARD ISASI,

*Plaintiff-Appellant,*

—against—

U.S. Gov., Governor, State Police N.J., U.S. Marshals, N.Y.P.D.,
Governor, NY, Judge, D.A. Lawyer,

*Defendants-Appellees.*

On Appeal From The United States District Court
For The Eastern District of New York

## MEMORANDUM FOR THE FEDERAL
## DEFENDANTS-APPELLEES

ROSLYNN R. MAUSKOPF,
*United States Attorney,*
*Eastern District of New York*
*One Pierrepont Plaza, 14th Fl.*
*Brooklyn, New York 11201*
*(718) 254-7000*

VARUNI NELSON,
ADAM P. SCHWARTZ,
*Assistant United States Attorneys,*
*Of Counsel.*

for relief, and as demonstrated below, such claims cannot be sustained.

Without a waiver, "sovereign immunity shields the Federal Government and its agencies from suit." Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475 (1994). It is well settled that "'the United States, as sovereign, is immune from suit save as it consents to be sued,' and hence may be sued only to the extent that it has waived sovereign immunity by enacting a statute consenting to suit." Millares Guiraldes De Tineo v. United States, 137 F.3d 715, 719 (2d Cir. 1998)(citation omitted). Moreover, "the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" Meyer, 510 U.S. at 475 (1994) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)). The waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." United States v. Mitchell, 445 U.S. 535, 538 (1980).

Additionally, despite the Supreme Court's recognition that claims against individual federal employees for constitutional violations may be implied under the Constitution, see Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), it has also made clear that such claims may not be asserted against agencies of the Federal Government. See Meyer, 510 U.S. at 486 ("An extension of Bivens to agencies of the Federal Government is not supported by

6

the logic of <u>Bivens</u> itself. We therefore hold that Meyer had no <u>Bivens</u> cause of action for damages against FSLIC.").

Here, the U.S Agency Defendants have not waived their sovereign immunity and thus are immune from suit. <u>See</u> <u>Mitchell</u>, 445 U.S. at 538. Moreover, the plaintiff cannot assert a <u>Bivens</u> claim against the U.S. Agency Defendants because only individual federal employees, not federal agencies, can be sued under <u>Bivens</u>. <u>See</u> <u>Meyer</u>, 510 U.S. at 486.

C.  **The Plaintiff Cannot Maintain a <u>Bivens</u> Claim Against The Individual Federal Defendants Because the Plaintiff has not <u>Alleged Personal Involvement by Such Defendants</u>**

Plaintiff has named "John Ashcroft, Attorney General of the United States and Janet Reno, former Attorney General" as defendants (the "Individual Federal Defendants"). <u>See</u> Plaintiff's complaint, p. 2. However, to maintain a valid <u>Bivens</u> claim against an individual, a plaintiff must specifically allege that the individual was personally involved in the purportedly wrongful conduct. <u>See</u> <u>Alfaro Motors, Inc. v. Ward,</u> 814 F.2d 883, 886 (2d Cir. 1987) ("having failed to allege, as they must, that these defendants were directly and personally responsible for the purported unlawful conduct, their complaint is 'fatally defective' on its face")(citations omitted). Here, Plaintiff has failed to allege any personal involvement in any alleged wrongful conduct by the Individual Federal Defendants. Therefore, he cannot maintain

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
- - - - - - - - - - - - - - - - - - - - -X
RICHARD ISASI,

                    Plaintiff-Appellant,

     - against -                          04-0629-pr

U.S GOV, et al.,
                    Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - - -X

## DECLARATION REGARDING FILING AND SERVICE

     I, MIGUEL BONEY hereby declare that, on August 20, 2004, the

following document was filed with the Court of Appeals for the Second

Circuit by hand delivery:

     MEMORANDUM FOR THE FEDERAL DEFENDANTS-APPELLEES

and two (2) copies of the MEMORANDUM FOR THE FEDERAL DEFENDANTS-

APPELLEES were served by mail on:

       Richard Isasi                Angela Foster
       98-A-1899                    Deputy Attorney General
       Attica Correctional Facility Attorney General of New Jersey
       Box 149                      R.J. Hughes Justice Complex
       Attica, N.Y. 14011-0149      25 Market Street
                                    P.O. Box 112
                                    Trenton, N.J. 08625

     In accordance with 28 U.S.C. § 1746, I declare under penalty

of perjury that the foregoing is true and correct to the best of my

knowledge and belief.

Dated: New York, New York
       August 20, 2004


                                   _Miguel Boney_
                                   Record Press

Exhibit B



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*United States Attorney's Office*
*225 Cadman Plaza East*
*Brooklyn, New York 11201*

February 6, 1995

## REQUEST FOR PROVISIONAL ARREST IN MEXICO

IDENTIFICATION OF FUGITIVE

Name (Include Aliases):  <u>Luis Martinez, a/k/a Richard Isasi,
a/k/a George L. Ortiz, a/k/a Veteran Falco, a/k/a Luis Martino</u>

Country of Citizenship:  <u>Cuba</u>

Date of Birth:  <u>8/24/54</u>    Place of Birth: <u>Cuba, City Unknown</u>

Race:  <u>Unknown</u>   Sex:  <u>Male</u>

Height: <u>5'11"</u> Weight: <u>160 Lbs.</u> Hair Color: <u>Black</u> Eye Color: <u>Brown</u>

Scars/Other Characteristics:  <u>Scar accross bridge of nose; may
have tattoo on arm</u>

Passport No.: <u>UNKNOWN</u>    Date and Place Issued: _____

Driver License No.: <u>UNKNOWN</u> _____

If already in custody in Foreign Country, Charges and
Anticipated Date of Release:  _____

I.   CHARGING DOCUMENTS

<u>CHARGE #1</u>

Check One:  Indictment <u>XX</u>  Superseding Indictment __  Complaint _

Number: <u>90-08-1240I</u> Date Filed: <u>5/1/90</u> _____

Name and Location of Court:  <u>Passaic County Superior Court,
Passaic, New Jersey</u>

State or Federal District requesting Extradition:  <u>New Jersey</u>

List Criminal Offense(s), Numer of Counts and Statute(s)
Violated:  <u>Robbery (1 Count, New Jersey Statutes 2C15-1)</u>



2

## CHARGE #2

Check One:  Indictment <u>XX</u>  Superseding Indictment __  Complaint _

Number: <u>18-13-05-90</u> Date Filed: <u>8/27/90</u>

Name and Location of Court: <u>Hudson County Superior Court, Jersey City, New Jersey</u>

State or Federal District requesting Extradition: <u>New Jersey</u>

List Criminal Offense(s), Numer of Counts and Statute(s) Violated: <u>Armed Robbery (2 Counts, N.J. Statutes 2C:15-1), Possession of a Weapon for Unlawful Purposes (2 Counts, N.J. Statutes 2C:39-4A: Unlawful Possession of a Weapon (2 Counts, New Jersey Statutes 2C:39-5B); Robbery (1 Count, N.J. Statutes 2C:15-1)</u>

## II.  ARREST WARRANTS

## CHARGE #1

Date Issued: <u>6/12/90</u>

Issued By (Name and Title): <u>Superior Court Judge, New Jersey Superior Court, Hudson County</u>

Wanted in the U.S. to:  <u>XX</u>  Stand Trial  ____  Serve Sentence
                        ____  For Sentencing  ____  Serve
                                                     Remaining
                                                     Sentence

## CHARGE #2

Date Issued: <u>12/13/94 (For escape from work release)</u>

Issued By (Name and Title): <u>Superintendent, New Jersey Department of Corrections</u>

Wanted in the U.S. to:  ____  Stand Trial  ____  Serve Sentence
                        ____  For Sentencing  <u>XX</u>  Serve
                                                     Remaining
                                                     Sentence

## III. STATUTE OF LIMITATIONS

The undersigned verifies that applicable statute of limitations does not bar prosecution of the subject offenses.

3

## IV.  FACTS OF THE CASE

### CHARGE #1

On or about March 14, 1989, in the City of Union City,
the defendant robbed Jacqueline Orellano at gunpoint at Delgado
Travel Agency in Union City. The defendant was indicted by a
grand jury in Hudson County on May 1, 1990. A bench warrant
issued for the defendant on the indictment on June 12, 1990.

### CHARGE #2

On or about July 9, 1990, the defendant posing as a
hitchhiker, was picked up by a truck driver who was transporting
a tractor trailer of cosmetics. Once inside the truck's cab, the
defendant hijacked the tractor trailer at gunpoint and handcuffed
the driver to a tree. The value of the goods in the truck was
approximately $353,000. The defendant was arrested later that
day, driving the truck to an unknown destination. The defendant
was in possession of a weapon. The defendant pled guilty to a
charge of robbery, and was sentenced on February 22, 1991 to an
indeterminate sentence of 5 to 15 years. He was designated to
serve his sentence at the Southern State Correctional Facility in
New Jersey. He began to serve his sentence, during the course of
which he was allowed to participate in a work release program.
The defendant escaped from the work release program on December
13, 1994. A warrant issued for his re-arrest on December 13,
1994.

5

4

## V.   AUTHORIZATION

Name, title, address, telephone number and signature of prosecutor authorizing extradtion request, committing to preparing the formal extradition rquest within the specified timeframe and agreeing to accept responsibility for the costs of extradition:

The U.S. Attorney's Office for the Eastern District of New York has been asked by the Hudson County Prosecutor's Office and the New Jersey Department of Corrections to seek a provisional arrest warrant for the defendant's arrest. Because the provisional arrest is likely to assist the Queens County District Attorney's Office in an unrelated matter, the Queens County District Attorney's Office has agreed to prepare the extradition documents, and to cover the cost of that prepartion the extradition of the defendant. The U.S. Attorney's Office in the Eastern District of New York agrees to coordinate the timely filing of extradition documents.

## VI.  MISCELLANEOUS

The D.E.A. agents in Mexico who will be coordinating with the Mexican authorities with respect to the execution of the provisional arrest request are A.S.A.C. Tom Telles, and Group Supervisor Yvette Torres.  Please advise the Mexican authorities to contact them once the provisional arrest request is received.

Eric Friedberg
Chief, Narcotics Unit
Eastern District of New York

4



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

United States Attorney's Office
225 Cadman Plaza East
Brooklyn, New York 11201

February 21, 1995

## REQUEST FOR PROVISIONAL ARREST IN MEXICO

### IDENTIFICATION OF FUGITIVE

Name (Include Aliases): <u>Luis Martinez, a/k/a Richard Isasi,
a/k/a George L. Ortiz, a/k/a Veteran Falco, a/k/a Luis Martino</u>

Country of Citizenship: <u>Cuba</u>

Date of Birth: <u>8/24/54</u>   Place of Birth: <u>Cuba, City Unknown</u>

Race: <u>Unknown</u>  Sex: <u>Male</u>

Height: <u>5'11"</u> Weight: <u>160 Lbs.</u> Hair Color: <u>Black</u> Eye Color: <u>Brown</u>

Scars/Other Characteristics: <u>Scar accross bridge of nose; may
have tattoo on arm</u>

Passport No.: <u>UNKNOWN</u>   Date and Place Issued: _____

Driver License No.: <u>UNKNOWN</u>

If already in custody in Foreign Country, Charges and
Anticipated Date of Release: _____

I.   CHARGING DOCUMENTS

Check One: Indictment <u>XX</u> Superseding Indictment __  Complaint __

Number: _____ Date Filed: <u>2/14/95</u>

Name and Location of Court: <u>Supreme Court, Queens County, New
York</u>

State or Federal District requesting Extradition: <u>New York</u>

List Criminal Offense(s), Numer of Counts and Statute(s)
Violated: <u>Six counts of murder in the second degree, in
violation of New York Penal Law Section 125.25-1 (Intentional
Murder); six counts of murder in the second degree, in violation
of New York Penal Law Section 125.25-2 (murder resulting from
recklessly engaging in conduct which evidences a depraved</u>

6



2

indifference to human life); six counts of murder in the second degree, in violation of New York Penal Law Section 125.25-3 (causing a murder during the course of a felony, to wit: a robbery); one count of attempted murder in the first degree, in violation of New York Penal Law Sections 110 and 125.25-1); five counts of robbery in the first degree, in violation of New York Penal Law Section 160.15-1 (robbery in the course of which a death is caused); five counts of robbery in the first degree, in violation of New York Penal Law Section 160.15-2 (armed robbery); one count of robbery in the second degree, in violation of New York Penal Law Section 160.10-1; one count of assault in the first degree, in violation of New York Penal Law Section 120.10-1; one count of assault in the first degree, in violation of New York Penal Law Section 120.10-3; one count of assault in the first degree, in violation of New York Penal Law Section 120.10-4; one count of criminal possession of a weapon in the second degree, in violation of New York Penal Law Section 265.03; one count of criminal possession of a weapon in the third degree, in violation of New York Penal Law Section 265.02-4; one count of criminal possession of a weapon in the fourth degree, in violation of New York Penal Law Section 265.01-2.

II.  ARREST WARRANTS

Date Issued:  2/14/95

Issued By (Name and Title):  Clerk of the Court, Supreme Court of the State of New York, County of Queens

Wanted in the U.S. to:    XX    Stand Trial    _____    Serve Sentence
                          _____  For Sentencing  _____    Serve
                                                          Remaining
                                                          Sentence

III.  STATUTE OF LIMITATIONS

        The undersigned verifies that applicable statute of limitations does not bar prosecution of the subject offenses.

IV.  FACTS OF THE CASE

        In the early morning hours of Saturday, January 7, 1995, the bodies of Arlex DeJesus Calle-Soto, Pablo Antonio Villanueva-Calle, Carla Lopez, Paola Lopez, Melinda Wynns and Maria Esperanza Ramirez were found shot and/or stabbed to death in the second floor apartment located at 25-34 120th Street in the College Point section of Queens County, New York.

        Police were led to the apartment by a note scrawled by a witness known to the Queens County District Attorney's Office, a seventh victim of the massacre, who survived the attack,

3

despite being shot in the head once and having her throat slashed.

This surviving victim revealed to Detectives that on the above date and location, three men, later identified by the victim through photographs as Richard Isasi, Saul "Cuba" Angulo and Enrique Rodriguez were present in the apartment with a loaded 9mm firearm and at least one knife. All three perpetrators repeatedly asked where the money was. Moreover, the three perpetrators demanded and removed jewelry from the five female victims. Isasi and Angulo then systematically shot the six decendants and the surviving victim and Rodriguez slashed the throats of at least one of the victims.

When the three perpetrators left the surviving victim for dead and were in another room in the apartment, she opened the second floor window, jumped off the terrace and summoned the help of a neighbor who called the police.

## V.   AUTHORIZATION

Name, title, address, telephone number and signature of prosecutor authorizing extradtion request, committing to preparing the formal extradition request within the specified timeframe and agreeing to accept responsibility for the costs of extradition:

The U.S. Attorney's Office for the Eastern District of New York has been asked by the Queens County District Attorney's Office to seek a provisional arrest warrant for the defendant's arrest. The Queens County District Attorney's Office has agreed to prepare the extradition documents, and to cover the cost of that prepartion and the cost of the extradition of the defendant. The U.S. Attorney's Office in the Eastern District of New York agrees to coordinate the timely filing of the extradition documents.

Eric Friedberg
Chief, Narcotics Unit
Eastern District of New York

INDICTMENT NO:    845/95

SUPERCEDES IND.282/95

State of New York)

          :

County of Queens )

# IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK,

## TO: ANY POLICE OFFICER IN THE STATE OF NEW YORK, GREETING:

An indictment having been found on the............ 21st ...........day of.........FEBRUARY, 1995.........................

in the SUPREME COURT, CRIMINAL TERM, Part AA-1 of the County of Queens, charging

RICHARD ISASI

with the crime of..... MURDER 2nd(18cts),ATT MURDER 2nd ROBBERY 1st(10 cts),ASSAULT 1st(3cts),

CRIM POSS WPN 2nd,CRIM POSS WPN 3rd,CRIM POSS WPN 4th ROBBERY 2nd

**YOU ARE THEREFORE COMMANDED** forthwith to arrest the above-named

RICHARD ISASI

and bring him/her before the court to answer the indictment, or if the Court has adjourned for

the term, that you deliver him/her into the custody of the New York City Department of Corrections.

The defendant has not been arraigned. Produce the defendant for arraignment in Court Part AA-1 in Kew Gardens.

Dated at Kew Gardens, Queens County, the ............21st............day of ........FEBRUARY,1995........................, 19...............

BY ORDER OF THE COURT

CLERK OF THE COURT

Exhibit C

**U.S. Department of Justice**

*Criminal Division*
*Office of International Affairs*
*1301 New York Avenue, NW*

MEW:MBT:MR:MCH
95-100-

*Washington, DC 20530*

February 5, 2003

Jan Hagan
Assistant District Attorney
Queens County District Attorney's Office
125-01 Queens Boulevard
Kew Gardens, New York 11415

     Re:  Extradition of Richard Isasi, a/k/a Luis Martinez

Dear Ms. Hagan:

In response to our conversations concerning the charges that Richard Isasi, a/k/a Luis Martinez, was extradited from Mexico to stand trial for, I am able to provide the explanation and attachments.

I was the attorney in the Office of International Affairs responsible for the Richard Isasi/Luis Martinez case from the time it was received until he was extradited.

We initially requested the provisional arrest of Richard Isasi/Luis Martinez in Mexico based on the charges against Isasi/Martinez in New Jersey.  Attachment 1 is a copy of the cable from State to Embassy Mexico City transmitting the text of this provisional arrest request.  The initial provisional arrest request was made only on the basis of the New Jersey charges because, at the time, he was only a suspect in your homicides (as mentioned in paragraph 1 of the cable).

Within the time frame specified in the Extradition Treaty Between the United States and Mexico, we (the United States) provided the necessary formal request for the extradition of Richard Isasi/Luis Martinez.  Extradition requests were submitted on behalf of New Jersey and your office.  The request from your office was prepared by Julien Wise and it specifically requested the extradition of Richard Isasi/Luis Martinez for the murders that took place in Queens County.  I have not attached a copy of the lengthy extradition request prepared by your office.  If you need a copy please let me know within the next week - before the file is returned to the federal records center.

On September 3, 1997, we received a faxed copy of Mexico's decision, dated August 7, 1995, to grant the extradition of Richard Isasi/Luis Martinez.  Attachment 2 - in Spanish.

On September 19, 1995, we received a cable, enclosed as Attachment 3, from Embassy Mexico City, informing us that they had received diplomatic note 8377, dated August 15, 1995, which conveyed the news that the extradition of Richard Isasi/Luis Martinez had been granted on August 7, 1995.  The cable further explains that his transfer would be deferred until he served the seven year prison sentence that he had received in Mexico for the crime of rape.

The news that the extradition of Richard Isasi/Luis Martinez would be delayed for seven years sent everybody on both sides of the border scrambling to find a way to return him to the United States in a more timely manner.  On May 3, 1996, the United States Embassy in Mexico City delivered diplomatic note number 1533 (enclosed as Attachment 4) requesting the temporary surrender of Richard Isasi/Luis Martinez.  This note is extremely useful to the determination of the charges that Richard Isasi/Luis Martinez was extradited for because it states in paragraph 2 that "The Secretariat, by means of note 8377, dated August 15, 1995, informed the Embassy of its agreement to extradite MARTINEZ for prosecution before the Supreme Court for the County of Queens, New York, case no. 845/95, dated February 21, 1995."   The note also describes the brutal murders and the need to have Richard Isasi/Luis Martinez returned for trial as quickly as possible.

Ultimately, Richard Isasi/Luis Martinez was released from prison in Mexico and extradited to the United States.  By  cable dated September 8, 1997, Embassy Mexico City advised that Richard Isasi/Luis Martinez was extradited on September 3, 1997 (attachment 5).

There is no doubt that Richard Isasi/Luis Martinez was extradited from Mexico to stand trial in Queens County for numerous criminal charges, including six murders.  If you have any questions, or need additional information, please contact me at (202) 616-0548.

                    Sincerely,

                    Mary Ellen Warlow
                    Director


                    By: _____
                        Michael Heineman
                        Trial Attorney

Exhibit X

Date Printed:                                      CHANNEL: n/a                    2
04 Mar 2003      DOC_NBR: 1995STATE087918         HANDLING: n/a

PTQ4092

UNCLASSIFIED      PTQ4092

(E2)

PARTIAL RELEASE TO CERTAIN PARTIES

PAGE 01        STATE    087918  110228Z      B6
ORIGIN L-01

INFO  LOG-00   ARA-01   CA-02   OASY-00   DS-00     TEDE-00   JUSE-00
      ADS-00   OCS-06   PPT-01  VO-06     DSCC-00   /017R

DRAFTED BY: L/LEI: DWCOOK
APPROVED BY: L/LEI: KLOKEN
DOJ/OIA:MHEINEMAN (SUBS)                   ARA/MEX:FTSCANLAN (INFO)
DESIRED DISTRIBUTION:
CA/VO/F/SL
                    ---------------BA2B47  110230Z /38
O P 110228Z APR 95
FM SECSTATE WASHDC
TO AMEMBASSY MEXICO IMMEDIATE
INFO FBI WASHDC PRIORITY 0000

UNCLAS STATE 087918

FOR CON - R. GONZALEZ

E.O. 12356: N/A
TAGS: CJAN, CVIS, KCRM, MX (MARTINEZ, LUIS)
SUBJECT: EXTRADITION: LUIS MARTINEZ

REF: STATE 031974

1. CERTIFIED/AUTHENTICATED/TRANSLATED DOCUMENTS WERE
SENT TO THE EMBASSY ON THURSDAY, APRIL 6, 1995 VIA
FEDERAL EXPRESS (AIRBILL NO. 400-2057 1062) ADDRESSED TO
                    UNCLASSIFIED

                    UNCLASSIFIED

PAGE 02        STATE    087918  110228Z
RICHARD GONZALEZ. UPON RECEIPT OF THE DOCUMENTS, EMBASSY
IS ASKED TO MAKE A FORMAL REQUEST FOR THE EXTRADITION OF
LUIS MARTINEZ AKA RICHARD ISASI. DEPARTMENT REFERS TO
REF ARREST REQUEST WHICH CITES TWO CASES FROM THE STATE
OF NEW JERSEY, AND ASK EMBASSY TO ADD AN ADDITIONAL CASE
TO THE EXTRADITION REQUEST FROM THE STATE OF NEW YORK
CHARGING LUIS MARTINEZ WITH MURDER (SEE PARAGRAPH 4).
DEPARTMENT REQUEST EMBASSY TO INCLUDE IN ITS FORMAL NOTE

                    n/a
                    UNCLASSIFIED                          Page: 1

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: JOHN L MILLS
DATE/CASE ID: 20 MAY 2003  200300569

Exhibit B. 3 Pages

UNCLASSIFIED

UNCLASSIFIED

Date Printed:                                    CHANNEL: n/a                    3
04 Mar 2003    DOC_NBR: 1995STATE031974         HANDLING: n/a

PAGE 05        STATE    031974   072329Z
DESCRIBED AS 5 FEET 11 INCHES TALL, WEIGHS 160 POUNDS,
WITH BLACK HAIR AND BROWN EYES. LUIS MARTINEZ HAS A SCAR
ACROSS THE BRIDGE OF HIS NOSE AND MAY HAVE A TATOO ON ONE
ARM. PHOTOGRAPHS AND FINGERPRINTS ARE AVAILABLE. DEA
AGENTS IN MEXICO WHO HAVE BEEN WORKING WITH THE MEXICAN
LAW ENFORCEMENT AUTHORITIES IN THIS MATTER AND ARE AWARE
OF MARTINEZ' LOCATION ARE [                        ]          B7(C)

9. THE STATE OF NEW JERSEY PROSECUTORS HAVE PROVIDED
DOJ/OIA ASSURANCES THAT, IF MARTINEZ IS PROVISIONALLY
ARRESTED, THE EXTRADITION DOCUMENTS WILL BE PREPARED AND
TRANSMITTED TO DOJ IN TIME TO MEET THE TREATY DEADLINE.

10. PLEASE POUCH THE DEPARTMENT (FOR L/LEI, ROOM 5419A)
A COPY OF THE EMBASSY'S NOTE AND CABLE THE EFFECTIVE DATE
IF/WHEN MARTINEZ IS ARRESTED AT U.S. REQUEST. REPORT
DEVELOPMENTS.
CHRISTOPHER

UNCLASSIFIED

NNNN

n/a
UNCLASSIFIED                              Page: 4

UNCLASSIFIED

UNCLASSIFIED

UNCLASSIFIED

| | CHANNEL: n/a | 3 |
| Date Printed: | HANDLING: n/a | |
| 04 Mar 2003    DOC_NBR: 1995STATE031974 | | |

PTQ8745

(E3)

UNCLASSIFIED    PTO8745
PARTIAL RELEASE TO CERTAIN PARTIES

PAGE 01        STATE    031974    072329Z
ORIGIN L-01                        B6, B7(C)

INFO   LOG-00    ARA-01    CA-02    OASY-00   DS-00    TEDE-00   ADS-00
       OCS-06    PPT-01    VO-06    DSCC-00   /017R

DRAFTED BY: L/ LE I: TLFURR
APPROVED BY: L/LEI:EKIINGI
DOJ/OIA:MHEINEMAN (SUBS) ARA/MEX:FTSCANLAN (INFO)
DESIRED DISTRIBUTION:
CA/VO/F/SL
                    ------------------A41A31   072330Z /38
  R 072327Z FEB 95
  SECSTATE WASHDC
TO AMEMBASSY MEXICO IMMEDIATE
INFO FBI WASHDC 0000

UNCLAS STATE 031974

FOR CON - R. GONZALEZ AND L. RODRIGUEZ

E.O. 12356: N/A
TAGS: CJAN, KCRM, CVIS, MX (MARTINEZ, LUIS)
SUBJECT: EXTRADITION: LUIS MARTINEZ

1. AT INSTANCE OF US DEPARTMENT OF JUSTICE (DOJ),
EMBASSY IS ASKED TO REQUEST THE PROVISIONAL ARREST FOR
THE PURPOSE OF EXTRADITION OF LUIS MARTINEZ AKA RICHARD
                    UNCLASSIFIED

                    UNCLASSIFIED

PAGE 02        STATE    031974    072329Z
ISASI AKA GEORGE L. ORTIZ AKA VETERAN FALCO AKA LUIS
MARTINO TO STAND TRIAL IN THE STATE OF NEW JERSEY FOR
ROBBERY AND TO SERVE THE REMAINDER OF HIS SENTENCE FOR
ANOTHER CHARGE OF ROBBERY. IMIS MARTINEZ IS ALSO A
SUSPECT IN THE INVESTIGATION OF A SEXTUPLE MURDER IN NEW
YORK STATE. PER DOJ, LUIS MARTINEZ HAS FLED TO MEXICO
AND DEA AGENTS, WORKING IN CONJUNCTION WITH MEXICAN LAW
ENFORCEMENT AUTHORITIES, HAVE LOCATED LUIS MARTINEZ IN
VERA CRUZ, MEXICO.

                    n/a
                    UNCLASSIFIED                    Page: 1

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: JOHN L MILLS
DATE/CASE ID: 20 MAY 2003  200300569

UNCLASSIFIED

Exhibit E

REQUESTED BY:

OFFICIAL USE ONLY -- TECS II INFORMATION -- OFFICIAL USE ONLY

50107          (b)(2)      TECS II PERSON SUBJECT                    PAGE   1
ECS RECORD ID: ███████████████████                         SUB RECORD 01

** NAME INFORMATION ==========================================================
     NAME: ISASI DIAZ, RICHARD

LIASES - MARTINEZ, LUIS

** PHYSICAL CHARACTERISTICS ==================================================
OB: 08281954 08241954
ACE: W          SEX: M   MAR STATUS:
YES: BR         HAIR: BK          HT: 511              WT: 165
CARS/MARKS/TATTOOS/ETC:

** ADDRESS AND TELEPHONE INFORMATION =========================================

** IDENTIFYING INFORMATION ===================================================
ITIZENSHIP:  CU

     ALIEN REG #  ISSUE #  ISSUE TYPE  REG DATA
     022801088  (b)(2)                    (b)(2)

XCLUSION CODE: █████  CONVICTED OF A CRIME IN SITE: ████████  LAREDO, TX
ISCELLANEOUS NUMBERS NUMBER: ████████ (b)(2)    TYPE: ████████ NUMBER (b)(2)

** OTHER INFORMATION =========================================================

** RECORD OWNERSHIP INFORMATION===============================================
TATUS:   SUSPECT, ALIEN                          DATE: 111104
GENCY:   NAILS TO TECS MIGRATION 2004 - NAME ████████
ELEPHON ███████ TITLE: PROG MGR                      (b)(2) + (b)(7)(C)

EMARKS:     (b)(7)(C)
ISASI TAKEN INTO CUSTODY BY FBI AGENTS ON 09/03/97. ISASI EXTRADITED FROM MEXI
O FOR FAILURE TO APPEAR/WANTED FOR MURDER. ISASI HAS AN FBI RECORD █████████
ISASI WAS PAROLED TO WEBB COUNTY JAIL, LAREDO, TEXAS, PENDING EXTRADITION TO N
ITY(I-247 EXECUTED). ISASI IS CONSIDERED TO BE VERY DANGEROUS. ISASI WAS TRAN
PERRED TO QUEENS COUNTY JAIL, NY, ON SEP. 04, 1997. ISASI IS ALSO KNOWN AS LUI
MARTINEZ(DOB:08/24/54). FBI ██████████████

ISASI TAKEN INTO CUSTODY BY FBI AGENTS ON 09/03/97. ISASI EXTRADIT ████
O FOR FAILURE TO APPEAR/WANTED FOR MURDER. ISASI HAS AN FBI RECORD
ISASI WAS PAROLED TO WEBB COUNTY JAIL, LAREDO, TEXAS, PENDING EXTRADITION TO N
ITY(I-247 EXECUTED). ISASI IS CONSIDERED TO BE VERY DANGEROUS. ISASI WAS TRAN
PERRED TO QUEENS COUNTY JAIL, NY, ON SEP. 04, 1997. ISASI IS ALSO KNOWN AS LUI
MARTINEZ(DOB:08/24/54). FBI
                (b)(7)

     (b)(2)

OFFICIAL USE ONLY -- TECS II INFORMATION -- OFFICIAL USE ONLY

UNCLASSIFIED

RELEASED IN PART
B6, B7(C)

- ACTA DE ENTREGA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EN EL PUERTO DE VERACRUZ, VERACRUZ, MEXICO, SIENDO LAS SEIS HORAS DEL DIA TRES DE SEPTIEMBRE DE MIL NOVECIENTOS NOVENTA Y SIETE, CONSTITUIDOS LEGALMENTE EN LAS INSTALACIONES DEL AEROPUERTO INTERNACIONAL "HERIBERTO JARA CORONA" DE ESA CIUDAD, COMPARECEN LOS SEÑORES , AGENTES DE LA POLICIA JUDICIAL FEDERAL, ADSCRITOS A LA DIRECCION GENERAL DE PLANEACION Y OPERACION DE LA POLICIA JUDICIAL FEDERAL DE LA PROCURADURIA GENERAL DE LA REPUBLICA, QUIENES TRAEN BAJO SU CUSTODIA AL CIUDADANO CUBANO **LUIS MARTINEZ (a) "RICHARD ISASI", (a) "GEORGE L. ORTIZ", (a) "VETERAN FALCO", (a) "LUIS MARTINO", (a) "LUIS MARTIN",** QUIEN FUE EXCARCELADO DEL CENTRO DE READAPTACION SOCIAL EN JALAPA, VERACRUZ, PARA SER TRASLADADO CON FINES DE EXTRADICION INTERNACIONAL A LOS ESTADOS UNIDOS DE AMERICA, HACIENDO ENTREGA EN ESTE MOMENTO DEL CERTIFICADO MEDICO DEL EXTRADITABLE SIGNADO POR EL PERITO MEDICO LEGISTA, ENCONTRANDOSE PRESENTE LOS SEÑORES, REPRESENTANTES DEL F.B.I., QUIENES HAN SIDO DESIGNADOS POR EL GOBIERNO DE LOS ESTADOS UNIDOS DE AMERICA, PARA RECIBIR Y TRASLADAR BAJO SU CUSTODIA HASTA LOS ESTADOS UNIDOS DE AMERICA AL SEÑOR **LUIS MARTINEZ (a) "RICHARD ISASI", (a) "GEORGE L. ORTIZ", (a) "VETERAN FALCO", (a) "LUIS MARTINO", (a) "LUIS MARTIN",** DEL CUAL CON ANTERIORIDAD EL GOBIERNO DE LOS ESTADOS UNIDOS DE AMERICA SOLICITO LA EXTRADICION, MISMA QUE FUE CONCEDIDA A DICHO PAIS MEDIANTE ACUERDO DE FECHA SIETE DE AGOSTO DE 1995, POR LA SECRETARIA DE RELACIONES EXTERIORES.- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

POR LO ANTERIOR, UNA VEZ QUE SE HAN SATISFECHO LOS REQUISITOS LEGALES PERTINENTES Y QUE LAS AUTORIDADES COMPETENTES DEL GOBIERNO DE MEXICO HAN CONCEDIDO AL GOBIERNO DE LOS ESTADOS UNIDOS DE AMERICA LA

UNITED STATES DEPARTMENT OF STATE
REVIEW AUTHORITY: DAVID W COX
CLASSIFICATION: UNCLASSIFIED
DATE/CASE ID: 14 FEB 2008  200300569

UNCLASSIFIED

UNCLASSIFIED

EXTRADICION INTERNACIONAL, PARA QUE SEA TRASLADADO A AQUEL PAIS Y SEA PROCESADO ANTE LA CORTE SUPREMA DEL CONDADO DE QUEENS, NUEVA YORK, EN LOS ESTADOS UNIDOS DE AMERICA, SUJETO AL PROCESO NUMERO 845/95, POR LOS SIGUIENTES CARGOS: HOMICIDIO EN SEGUNDO GRADO, ASI COMO EL CARGO DE TENTATIVA DE HOMICIDIO EN SEGUNDO GRADO - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

POR LO ANTES EXPUESTO SE CONCEDE AL GOBIERNO DE LOS ESTADOS UNIDOS DE AMERICA LA EXTRADICION DE LUIS MARTINEZ (a) "RICHARD ISASI", (a) "GEORGE L. ORTIZ", (a) "VETERAN FALCO", (a) "LUIS MARTINO", (a) "LUIS MARTIN", UNICAMENTE POR LOS CARGOS DE HOMICIDIO EN SEGUNDO GRADO Y TENTATIVA DE HOMICIDIO EN SEGUNDO GRADO POR LO QUE EN ESTE ACTO SE PROCEDE A LA ENTREGA FORMAL DEL CIUDADANO CUBANO LUIS MARTINEZ (a) "RICHARD ISASI", (a) "GEORGE L. ORTIZ", (a) "VETERAN FALCO", (a) "LUIS MARTINO", (a) "LUIS MARTIN", EN LAS PUERTAS DE LA AERONAVE DE  LINEA PRIVADA, A LOS SEÑORES REPRESENTANTES DEL F.B.I., QUIENES A PARTIR DE ESTE MOMENTO LO RECIBEN Y SE COMPROMETEN A SU CUSTODIA Y TRASLADO A LOS ESTADOS UNIDOS DE AMERICA, PARTIENDO EN EL VUELO PRIVADO, CON DESTINO A NUEVA YORK, ESTADOS UNIDOS DE AMERICA.- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ASIMISMO, SE HACE CONSTAR QUE LAS AUTORIDADES DEL INSTITUTO NACIONAL DE MIGRACION, DE LA SECRETARIA DE GOBERNACION HAN REALIZADO LOS TRAMITES LEGALES NECESARIOS Y OTORGADO LA AUTORIZACION CORRESPONDIENTE PARA QUE EL RECLAMADO LUIS MARTINEZ (a) "RICHARD ISASI", (a) "GEORGE L. ORTIZ", (a) "VETERAN FALCO", (a) "LUIS MARTINO", (a) "LUIS MARTIN", ABANDONE EL TERRITORIO DE LOS ESTADOS UNIDOS MEXICANOS.- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DE IGUAL FORMA, SE HACE CONSTAR QUE SE RECIBE Y AGREGA CERTIFICADO MEDICO DEL CIUDADANO CUBANO LUIS MARTINEZ (a) "RICHARD ISASI", (a) "GEORGE L. ORTIZ", (a) "VETERAN FALCO", (a) "LUIS MARTINO", (a) "LUIS MARTIN" PARA LOS EFECTOS LEGALES A QUE HAYA LUGAR.- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

A LAS SEIS HORAS CON TREINTA MINUTOS, DEL DIA  DE LA FECHA DE INICIO DE LA PRESENTE ACTA, CON LA INTERVENCION DE LAS PERSONAS ANTES MENCIONADAS,

UNCLASSIFIED

UNCLASSIFIED

SE DA POR CONCLUIDA LA DILIGENCIA, FIRMANDO AL CALCE Y AL MARGEN LOS QUE

EN ELLA INTERVINIERON PARA CONSTANCIA LEGAL.- - - - - - - - - - - - - - - - - - - - -

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

- - - - - - - - - - - - - - - - - - - - - - C O N S T E - - - - - - - - - - - - - - - - - - - - -

B6, B7(C)

**U.S. MARSHAL DE LOS ESTADOS**

**UNIDOS DE AMERICA**

B6, B7(C)

**U.S. MARSHAL DE LOS ESTADOS**

**UNIDOS DE AMERICA**

**DR. SALVADOR CRUZ PEREZ**

**DIRECTOR DE APREHENSIONES DE LA**

**POLICIA JUDICIAL FEDERAL**

MAYOR INFANTERIA

ARTURO GONZALEZ CARRANZA

**AGENTE DE LA POLICIA JUDICIAL FEDERAL**

UNCLASSIFIED

Exhibit F

41

Sanchez-People-Cross

1

2    you know, that police officers from New York were coming to

3    speak to him?

4         A    Not that I am aware of sir.

5         Q    Do you know if he had asked for any counsel or

6    attorney?

7         A    Not that I am aware of, sir.

8         Q    I want to jump ahead a little bit, then I'll come

9    back.

10        When you met him in New York, when he came back to New

11   York--

12        A    Yes.

*HERE* →

13 →     Q    You mentioned that you met him on the New York side

14   of the tunnel?

15        A    The question was when he was in custody again?

16        Q    Right.

17        A    And my response was on the New York side of the

18   Lincoln Tunnel.

19        Q    Was he delivered to you by other authorities?

20        A    Yes.

21        Q    New Jersey authorities?

22        A    Yes.

23        Q    When he was brought back to the United States, he

24   was brought back to New Jersey on the escape warrant or

25   whatever that was from the State of New Jersey?

42

1                    Sanchez-People-Cross

2       A    I believe so, yes -- oh, excuse me.

3       Q    You said he escaped from a work release program in

4   New Jersey that was the original warrant?

5       A    Right.

6       Q    When he was brought back to the United States, he

7   was brought back on that warrant, or did he come back to the

8   United States for the warrant for these homicides, if you

9   know?

10      A    I really am not one hundred percent sure as to, you

11  know, where that lies.

12      Q    But when you received custody of him, he was turned

13  over to you by the New Jersey authorities?

14      A    Correct.   ✗   STOP.

15      Q    Now after you received custody of him, you took him

16  where?

17      A    To the office of the Queens Homicide which is in

18  the 112th Precinct.

19      Q    Yes.  And at some point he was brought to Court?

20      A    Correct.

21      Q    That day, or the next day?

22      A    I believe it was the next day.

23      Q    And at some point a lineup was conducted as you

24  described; is that correct?

25      A    That is correct.

46

1                   Sanchez-People-Redirect

2    Mexico.

3        Q    As a Mexican charge?

4        A    Right.

5        Q    On September 4th when you met Mr. Isasi, were the

6    United States Marshalls present?

7        A    Yes.

8        Q    And were they the officials who turned his body

9    over to you?

10       A    Yes.

11                   MR. LASAK: Thank you.

12                   THE COURT:  Any recross.

13                   MR. WORGAN: No, thank you.

14                   THE COURT:  All right, thank you Detective

15              Sanchez.

16                   All right, anything else?

17                   MR. LASAK: No, your Honor.

18                   THE COURT:  Do you have any witnesses?

19                   MR. WORGAN: No, your Honor.

20                   THE COURT:  I'll reserve decision and Mr.

21              Lasak would you give me also a copy of the

22              statement in Spanish that was written out in

23              Spanish?

24                   MR. LASAK: Yes.

25                   THE COURT:  And a copy of the Miranda

47

1          Sanchez-People-Redirect

2    Warnings.  In other words, copies of two, three and

3    four.

4          It will have to be a controlled date.

5    December 4th as a control date from that point on

6    we can pick a date for trial.  December 4th.  Same

7    bail conditions.

8                    *   *   *   *

9          This is to certify that the foregoing is

10   a true and accurate transcript of the original

11   stenographic record of this case.

12

13

14

15

16   _____

17         Michele Lisby-Smith

18         Senior Court Reporter

19

20

21

22

23

24

25



**U.S. Department of Justice**

United States Marshals Service

*Office of General Counsel*

---

*Washington, DC 20530-1000*

MAY  1  2003

Richard Isasi
No. 98-A-1899
Attica Correctional Facility
Attica, NY  14011-0149

Re:    **Freedom of Information/Privacy Act Request No: 2003USMS5190**
       **Subject of Request:  Self**

Dear Mr. Isasi:

Reference is made to your above-captioned request.

Pursuant to your request, the U.S. Marshals Service conducted a search of its records and files in the Eastern District of New York (where you directed your request): the Southern District of New York; the Western District of New York; the Northern District of New York; and the District of New Jersey which failed to locate any records and/or information responsive to your request.

If you are dissatisfied with my action on this request, you may appeal by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530, within 60 days of the date of this letter.  Both the letter and the envelope should be clearly marked "Freedom of Information/Privacy Act Appeal." In the event you are dissatisfied with the results of any such appeal, judicial review will thereafter be available to you in the United States District Court for the judicial district in which you reside or have your principal place of business, or in the District of Columbia.

Sincerely,

*Margaret Wooten*

**FLORASTINE P. GRAHAM**
**FOI/PA Officer**
**Office of General Counsel**



U.S. Department of Justice

United States Marshals Service

*Office of General Counsel*

---

*Washington, DC 20530-1000*

**JUN   3 2003**

Richard Isasi
Reg. No. 98A1899
Attica Correctional Facility
POB 149
Attica, NY  14011-0149

Re:    **Freedom of Information/Privacy Act Request No: 2003USMS5542
          Subject of Request:   Transportation Records**

Dear Mr. Isasi:

Reference is made to your above-captioned request.

Pursuant to your request, the U.S. Marshals Service conducted a search of its records and files in the Justice Prisoner and Alien Transportation System which failed to locate any records and/or information responsive to your request. The records retention period for transportation records is two years.

If you are dissatisfied with my action on this request, you may appeal by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530, within 60 days of the date of this letter. Both the letter and the envelope should be clearly marked "Freedom of Information/Privacy Act Appeal." In the event you are dissatisfied with the results of any such appeal, judicial review will thereafter be available to you in the United States District Court for the judicial district in which you reside or have your principal place of business, or in the District of Columbia.

Sincerely,

*Margaret Woods*

**FLORASTINE P. GRAHAM
FOI/PA Officer
Office of General Counsel**

Exhibit G



**Office of the Attorney General**

Washington, D. C. 20530

September 9, 1996

The Honorable Antonio Lozano Gracia
Attorney General of the Republic
Attorney General's Office
Mexico City, Republic of Mexico

Dear Attorney General Lozano:

It is with growing concern that I write this letter to ask once again for your valuable assistance in the Luis Martinez matter. As you are aware, Martinez, a Cuban national, has been found extraditable to the United States to face multiple murder charges in New York, but his surrender has been deferred until he completes his sentence for rape in Mexico. As you are also aware from our prior discussions on this issue, the postponement of Martinez' transfer will almost certainly result in his achievement of impunity for the crimes committed in this country because the only living eyewitness to his activities here will not be available unless his trial can be commenced in New York in the immediate future.

Clearly, the Martinez situation and our request for his temporary transfer for purposes of prosecution and sentencing present novel and difficult challenges for both our governments; but they are challenges that I believe we must address with all possible creativity, flexibility, and aggressiveness. Should we fail in our cooperative efforts in this case, only Luis Martinez will benefit, because our failure, no matter how well-founded in legal principle, will allow him to escape justice based solely on the persistent nature of his violent criminality.

In an effort to facilitate our cooperative efforts to resolve this matter, we submitted a diplomatic note to your government on May 3 of this year providing assurances regarding Martinez' immediate return to Mexico following the proceedings against him in New York. Our assurances were based on detailed consultations with each of the executive authorities who will be involved in the proposed custodial and transfer process, including the New York Governor's Office, the Office of the Queens County District Attorney, the New York State Department of Corrections, the U.S. Immigration and Naturalization Service, and the U.S. Marshals Service. We believe that our assurances should

The Honorable Antonio Lozano Gracia
Page 2

be considered fully sufficient to evidence our commitment to
effecting Martinez' prompt re-transfer to Mexico following his
prosecution and sentencing, and we would urge your government and
the authorities in Veracruz to accept them and recognize the good
faith in which they have been provided.

From our continuing consultations on the Martinez matter, we
also understand that your government may have some lingering
concerns about the ability of the United States to provide
reciprocal assistance in similar circumstances.  It is true that
we are not able to undertake an absolute, written guarantee of
reciprocity in all future cases and that our assurance to your
government on this issue therefore encompasses simply our pledge
to use our best efforts and all available legal mechanisms to
effect the transfer of detained or sentenced individuals to
Mexico when the interests of justice would otherwise be
disserved.  I believe it is important to note, however, that our
past efforts in cases like these have in fact achieved positive
results for Mexico through the transfer of defendants despite the
pendency of a U.S. criminal charge or sentence.

For instance, in the 1995 extradition matter involving
Enrique Fuentes Leon, our prosecuting authorities in Texas agreed
to surrender the defendant to Mexican authorities and defer the
pursuit of pending U.S. criminal charges because the equities of
a return to Mexico were found to outweigh our interest in his
immediate prosecution here.  Even more compelling in terms of our
ability and willingness to reciprocate is another case from 1995,
that of Barbarino DeLeon Compean, in which Oklahoma state
authorities agreed to commute the prisoner's narcotics-related
sentence so that he could be expeditiously extradited to Mexico
on the clearly more serious charges of murder and rape.  Although
neither of these cases is precisely parallel to the Martinez
situation, we believe they clearly demonstrate our flexibility
and commitment to ensuring that defendants can and will be
brought to justice for their most serious criminal conduct, even
if we must suspend our own processes to achieve that result.

Finally, I would also like to point out that the Department
of Justice is in the process of reviewing possible legislation on
the issue of temporary surrender for prosecution.  If and when
such legislation is adopted we will have an even broader basis on
which to effect temporary transfers than is currently available
to us through our case-by-case review and analysis.  The
enactment of legislation on this procedure would also obviate any
need to amend or supplement existing bilateral treaties to
address the matter, thus allowing us to expedite our efforts to
ensure that the law enforcement interests of all affected
countries can be fully and fairly addressed.



**U. S. Department of Justice**

*Criminal Division*

---

*Office of the Assistant Attorney General*                    *Washington, D.C. 20530*

SEP  5 1996

MEMORANDUM FOR THE ATTORNEY GENERAL

THROUGH THE DEPUTY ATTORNEY GENERAL

FROM:               John C. Keeney          MARK M RICHARD
                    Acting Assistant Attorney General
                                            Deputy Assistant Attorney General
                                            Criminal Division

SUBJECT:            Letters to Attorney General Antonio Lozano
                    Gracia and Mexican Foreign Minister Jose
                    Angel Gurria

TIMETABLE:          As soon as possible.

SYNOPSIS:           Per your request, attached are letters to
                    Mexican Foreign Minister Gurria and Attorney
                    General Lozano reiterating our urgent need
                    for their immediate assistance in the
                    <u>Martinez</u> case.

RECOMMENDATION:     That you sign the attached letters, and that
                    they be returned to OIA for immediate
                    transmittal.

The Honorable Antonio Lozano Gracia
Page 3

Over the past years, we have spoken frequently about increasing our cooperative efforts against crime and working together to ensure that criminals do not benefit from the differences between our criminal justice systems and procedures. The Luis Martinez case gives us a real opportunity to validate these mutual commitments and to demonstrate the flexibility and innovation needed to meet our common law enforcement challenges. I look forward to joining with you in finding a successful and expeditious resolution to this matter.

Sincerely,

Janet Reno