**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RICHARD ISASI,                                           )
                                                                      )
                             Plaintiff,                         )
                                                                      )
               v.                                               )  Civ. Action Nos. 06-2222 (RBW)
                                                                      )
PRISCILLA JONES et al.,                              )
                                                                      )
                             Defendants.                    )
_____)

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS, OR IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and

pertains to Plaintiff's alleged FOIA requests to the Defendants.  Plaintiff sought to obtain

documents pertaining to his extradition from Mexico to the United States, which Plaintiff

believed were in the possession of the U.S. Department of Justice ("DOJ") and the U.S.

Department of State ("DOS").  He alleges that the Defendants have improperly withheld the

records that he seeks.  See Compl. ¶ 22.  Specifically, Plaintiff initiated this FOIA action against

employees of DOJ and DOS in their individual capacities, seeking completion of his FOIA

requests for materials regarding his extradition to the United States in 1996.[1]  At this juncture,

however, there is no question that Defendants, after conducting reasonable searches, have

released all responsive documents found.   Plaintiff also makes Bivens-type[2] constitutional

claims and seeks, inter alia, money damages.

---

[1]      Plaintiff also requested documents regarding his extradition from the State of New Jersey to
Mexico, which did not take place.  See Declaration of Margaret Grafeld, ¶ 28.  The Plaintiff was
ultimately tried by the authorities in New York.
[2]      Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

Plaintiff's claims against all of the Defendants should be dismissed because this Court

lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  The Court lacks subject

matter jurisdiction over these Defendants because none qualify as an "agency" under FOIA, and

because the agencies have completed processing the FOIA requests at issue, such that the

Plaintiff's claims are moot.  For the same reasons, Plaintiff fails to state a claim upon which

relief can be granted, such that the Court should dismiss the case with prejudice under Fed. R.

Civ. P. 12(b)(6).  In the alternative, all Defendants are entitled to summary judgment on the

FOIA claims.  No issue of material fact exists as to whether the Defendants' agency-employers

received FOIA requests or are agencies subject to FOIA.  Nor is there any issue of material fact

regarding the adequacy of the agencies' searches, which involved an exhaustive second round of

searching in light of additional identifying information that Plaintiff had not included in his

original requests.  The agencies have released all of the responsive material located in these

searches, save for several minor withholdings that Plaintiff does not contest.  Plaintiff cannot

now deny that adequate searches have been conducted and that all responsive, non-exempt

material has been released to him by both agencies.  Thus, even if the agencies are substituted for

the named FOIA defendants, they deserve judgment as a matter of law.  To the extent that

Plaintiff alleges Bivens claims against the Defendants, these claims should be dismissed for lack

of subject matter jurisdiction.

On May 12, 2008, Plaintiff filed an opposition ("Plaintiff's Opposition") to Defendants'

Motion to Dismiss, or in the Alternative, for Summary Judgment ("MTD/MSJ"), in which he

failed to refute any of the material facts presented by Defendants.[3]  See R. 53.[4]  In fact, the only

---

[3]     In the interest of simplicity, from this point forward the term "Defendants" will be intended
generally to refer to DOJ and DOS, which would be properly-captioned defendants in this case.
[4]     "R." followed by a number refers to the document identified at that number on this Court's
docket entries.

documents Plaintiff claimed he did not receive from Defendants were either documents that

Defendants would not have a reasonable likelihood of possessing in the first place, or ones that

Plaintiff has never requested (either by FOIA request or in the Court) before.  Through their

document production and as described in their Vaughn index, Defendants have released to

Plaintiff all of the responsive, non-exempt material in their possession, and have adequately

described without challenge the FOIA exemptions invoked.  Therefore, Plaintiff's FOIA claims

are moot and Defendants are entitled to judgment as a matter of law.

Plaintiff's May 12, 2008 filing is also a motion for partial summary judgment, by which

Plaintiff inappropriately attempts to add a number of new defendants with new <u>Bivens</u> claims

and achieve summary judgment on all of his Constitutional claims simultaneously.  The Court

should not allow Plaintiff to not only amend his Complaint by this procedure and at this late

juncture, but also add entirely new defendants in their individual capacities, which would require

Plaintiff to perfect proper service upon the new defendants and would require them to request

individual representation from the Department of Justice.  Even if the Court were to permit

Plaintiff to add these new defendants with <u>Bivens</u> claims, the complaints against them should be

dismissed (and the simultaneous summary judgment motion should be denied).  Such a dismissal

would be proper because (1) the new agency Defendants (and the Defendant "United States") are

not individual Federal Government employees, as required under <u>Bivens</u>, and (2) even supposing

*arguendo* that the allegations levied against the individual Defendants are true, those Defendants

would have been acting in their official capacities and would be protected by qualified immunity.

Further, granting Plaintiff the opportunity to amend his Complaint would be futile because

Plaintiff has neither a cognizable Constitutional claim nor a viable claim under the Extradition

Treaty between Mexico and the United States.

I.    DEFENDANTS' PROCESSING OF PLAINTIFF'S FOIA REQUESTS

Plaintiff claims that Defendants have not produced the records he seeks.  In the first

place, this claim is insufficient to show that the agencies did not fulfill their FOIA obligations.

In responding to a FOIA request, an agency must conduct a reasonable search for responsive

records.  Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Cleary, Gottlieb,

Steen & Hamilton v. Dept. of Health, et al., 844 F. Supp. 770, 776 (D.D.C. 1993); Weisberg v.

U.S. Dept. of Justice, 705 F.2d 1344, 1352 (D.C. Cir. 1983).  This "reasonableness" standard

focuses on the method of the search, not its results, so that a search is not unreasonable simply

because it fails to produce responsive information.  Id. at 777 n.4.  The fundamental question is

not "whether there might exist any other documents responsive to the request, but rather whether

the search for those documents was adequate."  Steinberg v. Dept. of Justice, 23 F.3d 548, 551

(D.C. Cir. 1994) (quoting Weisberg v. Dept. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

Even when a requested document indisputably exists or once existed, summary judgment will

not be defeated by an unsuccessful search for the document so long as the search was diligent

and reasonable.  Nation Magazine v. United States Customs Serv., 71 F.3d 885, 892 n.7 (D.C.

Cir. 1995).

The burden rests with the agency to establish that it has "made a good faith effort to

conduct a search for the requested records, using methods which can be reasonably expected to

produce the information requested."  Oglesby, 920 F.2d at 68; see SafeCard Servs. v. SEC, 926

F.2d 1197, 1201 (D.C. Cir. 1991).  "An agency may prove the reasonableness of its search

through affidavits of responsible agency officials so long as the affidavits are relatively detailed,

non-conclusory and submitted in good faith."  Miller, 779 F.2d at 1383; Goland v. CIA, 607 F.2d

339, 352 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980).  Although the agency has the

burden of proof on the adequacy of its search, the "affidavits submitted by an agency are

'accorded a presumption of good faith'" Carney v. Dept. of Justice, 19 F.3d 807, 812 (2d Cir.

1994), cert. denied, 513 U.S. 823 (1994) (quoting SafeCard Servs., 926 F.2d at 1200).  Thus,

once the agency has met its burden regarding adequacy of its search, the burden shifts to the

requester to rebut the evidence by a showing of bad faith on the part of the agency.  Miller, 779

F.2d at 1383.  A requester may not rebut agency affidavits with purely speculative allegations.

See Carney, 19 F.3d at 813; SafeCard, 926 F.2d at 1200; Maynard v. CIA, 986 F.2d 547, 559-

560 (1st Cir. 1993).

      The affidavits filed by the Defendant agencies in this matter were sufficiently specific to

meet their burden regarding search adequacy, and have shifted the burden to the requester to

rebut the evidence presented.  As explained in Defendants' MTD/MSJ, Pamela A. Roberts, trial

attorney for the FOIA/PA Unit in the Criminal Division of the U.S. Department of Justice,

personally reviewed the original, signed search response to Plaintiff's FOIA request, and verified

that the only file located for Plaintiff was reviewed and processed.  See Declaration of Pamela A.

Roberts ("Roberts Decl."), ¶ 20 (R. 43 Exh. 1).  After it was brought to the attention of Ms.

Roberts that Plaintiff had several aliases, a full search was conducted for each of Plaintiff's

aliases as follows: Luis Martinez, George L. Ortiz, Veteran Falco, and Luis Martino.  Id. at ¶ 21.

Aside from the file maintained by the Office of International Affairs, no additional files or

records were located matching the district and dates described in Plaintiff's request.  Id.  Ms.

Roberts further explained that "[i]n sum, no documents were withheld in full.  Of the 24

documents located by the Criminal Division, two were released to plaintiff with excisions.  Of

the five documents referred from the State Department, two were released to plaintiff with

excisions. The excised documents were carefully reviewed for reasonable segregation of non-

exempt information." Id. at ¶ 34.

Defendants' MTD/MSJ also explained sufficiently that the the State Department

conducted a clearly adequate search for the material requested by Plaintiff. It

> conducted an exceedingly thorough search, using not only the name Plaintiff
> provided in his FOIA request ("Richard Isasi,"), but also various aliases that the
> Department discovered. The Department of State searched both its active and
> retired files, and searched both at home and abroad, for information responsive to
> Plaintiff's request. All in all, qualified Department personnel searched "all
> records systems reasonably expected to contain the information sought by
> Plaintiff," including records of the office that handles extraditions, the office that
> handles Mexican affairs, the American Embassy in Mexico City, and the
> Department's massive Central Foreign Policy File. Consequently, although
> Plaintiff's initial requests and subsequent attempts at clarification have been
> unclear at best, DOS has released documents that appear to correlate to what
> Plaintiff requested where there is a reasonable possibility that DOS has such
> records at all.

R. 43 at 19-20 (internal citations omitted). Since DOJ and DOS were the only two agencies

required to search their records, Defendants have met their burden of showing that they have

searched their records for responsive documents adequately.

Plaintiff does not dispute any of the specific exemptions cited by Defendants. Instead,

Plaintiff's Opposition maintains merely that "defendants failed to produce the records requested

under … FOIA." R. 53 at 2. Plaintiff does not point to any inadequacy in the Defendants'

searches other than their failure to produce these records, and as the Defendants have

demonstrated, there is no reasonable possibility that additional searches would produce the

records Plaintiff seeks. On the contrary, the records Plaintiff seeks are either nonexistent or

would be foreign government records that are not in Defendants' possession and control. See

Grafeld Decl., ¶ 30; see also Roberts Decl., ¶ 21. Specifically, Plaintiff requests documents that

Defendants would not have because they would be internal Mexican documents, if they exist at

all: Plaintiff now alleges that Defendants have not released "any document of plaintiff's

extradition proceeding in the Court of Mexico[,]" or an "extradition order by the Mexican judge

signed by plaintiff." Id. at 4.  Firstly, considering that individual American agencies do not have

responsibility for documents created by other governments, common sense dictates that no

American agency would necessarily possess or control internal Mexican documents not used for

international correspondence.  See generally Grafeld Decl., ¶ 28 (describing the process by

which extraditions from Mexico are effected, and describing which records would be transferred

between Mexican and American authorities).  Secondly, DOS has already addressed the issue of

whether it would have the Mexican court documents in question:  DOS "would not typically

possess [some of the records requested], as borne out by the searches in this case," and DOS has

located what Plaintiff requested "where there is a reasonable possibility that the Department

would have such records at all."  Declaration of Margaret A. Grafeld ("Grafeld Decl."), ¶ 30, n.1

(R. 43 Exh. 2).  Plaintiff also complains that Defendants did not release Executive Order 11517.

Plaintiff never requested a copy of this Executive Order before, and accordingly the Defendants

had no obligation to produce it under the FOIA.  In any event, it is a publicly available document

that is attached to this brief for Plaintiff's benefit.  See Exh. 1.

Plaintiff's additional concern regarding the documents released by Defendants is that

they were produced "without any list of the title of the documents withheld."  R. 53 at 7.

Defendants have no specific obligation to release the "titles" of documents requested, if they are

titled at all.  In any event, with regard to the documents produced by DOS, all but one of the

documents were released with only a few names redacted on privacy grounds; therefore, Plaintiff

has the titles of those documents to the extent that they are titled at all.  See R. 43 at 15-20.  As

for the one document withheld in full, J5, DOS has explained adequately that it is a marked-up

draft of a diplomatic note that has no factual non-deliberative material that may be segregated

and released.  See id. at 16-17.  With respect to DOJ, "no documents were withheld in full.  Of

the 24 documents located by the Criminal Division, two were released to plaintiff with excisions.

Of the five documents referred from the State Department, two were released to plaintiff with

excisions."  Roberts Decl., ¶ 34.  Although the other agencies that had documents responsive to

Plaintiff's FOIA requests (Executive Office of United States Attorneys ("EOUSA") and the DOJ

Office of Legal Counsel ("OLC")) did not create lists of the titles of the documents withheld,

they were in no way required to do so.  Rather, EOUSA and OLC described adequately the

reasons why certain documents were withheld in full.  See R. 53 at 20-26.

## II. PLAINTIFF'S ATTEMPT TO ADD NEW CLAIMS AND DEFENDANTS

To read Plaintiff's Complaint is to know that his claims arise solely out of his FOIA

requests to DOJ and DOS.  Plaintiff's invocation of Bivens is only done by his placing of a

citation on the "The Jurisdiction of the Court is Invoked" page.  See R. 1 at ii.  The only way that

Plaintiff related a Bivens claim to the factual allegations was by complaining that his

Constitutional rights had been violated because Defendants allegedly failed to release the

documents he requested.  See id. at 3-4.  However, Plaintiff's claims fail because FOIA is a

comprehensive statutory scheme to resolve all issues associated with the release of government

documents.  Harrison v. Lappin, Civil Action No. 04-0061(JR), 2005 U.S. Dist. LEXIS 5653, at

*3 (D.D.C. Mar 31, 2005); Johnson v. Executive Office for United States Attorneys, 310 F.3d

771, 777 (D.C. Cir. 2002).  With an extensive and detailed process available to requesters under

FOIA, courts have concluded that a Bivens-type remedy is not appropriate.  Harrison, No. 04-

0061(JR) at 3; Johnson, 310 F.3d at 777; see Spagnola v. Mathis, 859 F.2d 223, 228 (D.C. Cir.

1988) (en banc) (no Bivens remedy available if a statute provides a "comprehensive system to

administer public rights").  Furthermore, to the extent Plaintiff seeks to hold any individual

government employee liable, individuals are not proper parties to civil actions under FOIA.

Harrison, No. 04-0061(JR) at 3; See Stone v. FBI, 816 F.Supp.782, 785 (D.D.C. 1993)

(individual employees of the federal government are not subject to suit under FOIA).

   Plaintiff's Opposition is also a motion for partial summary judgment, by which Plaintiff

attempts to add a number of new defendants and new Bivens claims (thereby amending his

complaint inappropriately) and achieve summary judgment on all of his Constitutional claims

simultaneously.  In fact, none of the new Bivens claims are against any of the original

Defendants.  Plaintiff attempts to challenge collaterally his extradition from Mexico by bringing

the following new Defendants into the case with Bivens claims: the United States; Michael

Heineman, trial attorney of the DOJ Criminal Division; Richard Gonzales, of the United States

Embassy in Mexico; the Federal Bureau of Investigation ("FBI"); and the U.S. Marshals Service.

See Plaintiff's Declaration in Support of Plaintiff's Motion for Partial Summary Judgment ("R.

53 - Plaintiff's Declaration"), 2-3.

   The Court should not allow Plaintiff to not only amend his Complaint by this procedure

and at this late juncture, but also add entirely new Defendants in their individual capacities,

which additionally requires that Plaintiff perfect proper service upon the new Defendants.  See

Fed. R. Civ. P. 4.[5]

The Federal Rules of Civil Procedure require an order of the Court when a plaintiff seeks to

amend the complaint to add parties, and here no request for such an order has been made.  Fed.

R. Civ. P. 21; see Novak v. Capital Mgmt. & Dev. Corp., 452 F.3d 902, 907 (D.C. Cir. 2006).

This Court has also recognized that a Plaintiff may add new claims for the first time in neither

---

[5]    In addition, Department of Justice policy requires defendants sued in their individual capacities to
request, and have approved, individual representation before such defendants may be represented on the
merits by undersigned counsel.

his summary judgment nor opposition briefs.  See Hamandi v. Chertoff, 2008 U.S. Dist. LEXIS

36400, *5-*6 n.1 (citing Sharp v. Rosa Mexicano, 496 F. Supp. 2d 93, 97 n.3 (D.D.C. 2000)

("[P]laintiff may not, through summary judgment briefs, raise the new claims . . . because

plaintiff did not raise them in his complaint, and did not file an amended complaint."); DSMC,

Inc. v. Convera Corp., 479 F. Supp. 2d 68, 84 (D.D.C. 2007) (rejecting plaintiff's attempts to

broaden claims and thereby amend its complaint in opposition to defendant's motion for

summary judgment)).

This Court also recognizes when a Plaintiff tries to extend a FOIA complaint far beyond

that permitted by the law and reason.  In Szymanski v. DEA, this Court stuck a proffered

amended complaint because

> Plaintiff Szymanski has not tried to amend his complaint. Instead, he has
> attempted to turn a straightforward F.O.I.A. controversy into an amalgam of
> constitutionally based claims for money damages and what can only be
> interpreted as a writ of habeas corpus, challenging the legality of his
> incarceration.  Even a liberal construction of Mr. Szymanski's amended complaint
> confirms that no *amendment* was intended. The initial complaint as brought under
> the F.O.I.A. will require this Court to engage in an inquiry into the soundness of
> the Defendant D.E.A.'s withholding of documents. The initial complaint
> challenges an administrative action by an executive agency of the United States.
> While the withheld document may pertain to Mr. Szymanski's present
> incarceration, the dispute as to whether the D.E.A. is properly withholding
> information is unrelated to Mr. Szymanski's substantive allegations that he is
> unlawfully incarcerated and that his constitutional rights have been violated. To
> put it in terms of "same transaction or occurrence" language, the occurrence that
> provoked the F.O.I.A. complaint was a decision by a D.E.A. employee to
> withhold a requested document. The transaction or occurrence that provoked the
> additional claims in the amended complaint stem from Mr. Szymanski's arrest
> and subsequent conviction for drug-dealing.

Szymanski v. DEA, 1993 U.S. Dist. LEXIS 14574, *5-*6 (D.D.C. Oct. 6, 1993) (emphasis in

original).

The instant case presents a similar situation, in which Plaintiff has made FOIA requests

for documents relating to his extradition from Mexico, which provided the basis for the instant

action.  However, now that Defendants have released documents in the course of litigation,

Plaintiff has found new potential defendants in the documents and is trying to challenge the

underlying extradition.  This Court has further explained that "[FOIA] cases should not 'serve as

springboards' to other lawsuits based on the documents received under the [FOIA.]"  Id. at *6-*7

(quoting Mississippi Association of Cooperatives v. Farmers Home Administration, 139 F.R.D.

542, 545 (D.D.C. 1991) ("These claims have no relationship to the original suit, and the

amendment of the complaint in this regard would radically shift the scope and nature of the

litigation. Because the complaint, as amended, would be so different it cannot be said that leave

to amend in this case would promote judicial economy. Nor is plaintiff prejudiced because it is

free to bring the proposed amended complaint as a separate, new action."))

        The court's logic in Mississippi Association of Cooperatives and Szymanski apply

equally to the instant situation.  If accepted, the "Motion for Partial Summary Judgment" creates

a completely different lawsuit against different parties.  This Court should not permit a FOIA

complaint to become "the narrow edge of a wedge which forces open the court house door to

unrelated claims against unrelated parties."  Id. at *7.  Mr. Isasi may be entitled to make his case

on those matters in a separate action, but amendment of the original complaint (moreover, by

dispositive pleading rather than an actual, proffered amended complaint) in this case to

incorporate non-FOIA claims against new agency and individual defendants would only serve to

complicate this matter and further delay the resolution of the FOIA complaint.  See id.

## III. PLAINTIFF'S NEW CLAIMS WOULD BE DISMISSED AS FUTILE

        It is well-settled that a motion to amend a complaint should be denied if it is futile, and an

amended complaint is futile if it would not survive a motion to dismiss.  E.g., Willoughby v.

Potomac Elec. Power Co., 100 F.3d 999, 1003 (D.C. Cir. 1996) (affirming denial of leave to

11

amend as futile, the court stated:  "Futility provides a good reason here . . . With little chance of a

successful Title VII claim, the district court did not abuse its discretion in concluding

Willoughby was not entitled to add the claim to his complaint."); James Madison Ltd. v. Ludwig,

82 F.3d 1085, 1099 (D.C. Cir. 1996) (affirming denial of leave to amend, court stated:  "We

review a district court's denial of a motion for leave to amend a complaint for abuse of

discretion, requiring only that the court base its ruling on a valid ground.  Courts may deny a

motion to amend a complaint as futile, as the district court did here, if the proposed claim would

not survive a motion to dismiss.") (citations omitted).

    If the Court were to permit Plaintiff to amend his complaint to add new Defendants with

Bivens claims, the extent to which Plaintiff seeks damages against the United States, FBI, and

U.S. Marshals Service must be dismissed absent a waiver of sovereign immunity.  See Doggett

v. Gonzales, 2007 U.S. Dist. LEXIS 72502, *19 (D.D.C. Sept. 19, 2007) (Walton, J.) (citing

Clark v. Library of Congress, 750 F.2d 89, 101-02 (D.C. Cir. 1984).  The inherent sovereign

immunity of the United States protects it and its agencies, such as the FBI and U.S. Marshals

Service, from suit absent express waiver.  See United States v. Nordic Village, 503 U.S. 30

(1992).  Plaintiff's complaint does not contain any colorable basis for such a waiver.  Therefore,

to the extent Plaintiff asserts claims for damages against the FBI and U.S. Marshals Service, such

claims must be dismissed for lack of subject matter jurisdiction.

    With regard to the new individual Defendants, Plaintiff's claims would fail because

Federal officials enjoy qualified immunity from constitutional and statutory claims against them

in their individual capacities.  Cleavinger v. Saxner, 474 U.S. 193, 206 (1985).  Qualified

immunity protects government officials from liability for civil damages "insofar as their conduct

does not violate clearly established . . . constitutional rights of which a reasonable person would

have known." (<u>Olaniyi v. District of Columbia</u>, 416 F. Supp. 2d 43, 52 (D.D.C. 2006) (<u>quoting</u>

<u>Int'l Action Ctr. v. United States</u>, 365 F.3d 20, 24 (D.C. Cir. 2004)) (internal quotation marks

omitted).  "A court engaging in a qualified immunity analysis must 'first determine whether the

plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to

determine whether that right was clearly established at the time of the alleged violation.'"  <u>1613</u>

<u>Harvard Ltd. P'ship v. District of Columbia</u>, Civ. A. No. 05-0726, 2007 WL 2071665, at *4

(D.D.C. July 19, 2007), <u>quoting</u> <u>Conn v. Gabbert</u>, 526 U.S. 286, 290 (1999).

    Plaintiff claims to be a *Cuban* citizen who had his rights under Fourth and Fourteenth

Amendments to the *United States Constitution* violated by officials of the United States

Government in the nation of *Mexico*.  <u>See</u> R. 48 at 5; R. 53 - Plaintiff's Declaration at 2-3.  The

insurmountable deficiency in Plaintiff's allegation is that as an alien outside of the United States,

Plaintiff does not enjoy these rights as provided by the United States Constitution.  <u>See</u> <u>United</u>

<u>States v. Verdugo-Urquidez</u>, 494 U.S. 259, 266-271 (1990) ("[T]he purpose of the Fourth

Amendment was to protect the people of the United States against arbitrary action by their own

Government; it was never suggested that the provision was intended to restrain the actions of the

Federal Government against aliens outside of the United States territory…. [A]liens receive

constitutional protections when they have come within the territory of the United States and

developed substantial connections with the country").  Accordingly, the Individual Defendants

would be entitled to qualified immunity and Plaintiff's <u>Bivens</u> claims against all of the new

Defendants would be subject to prompt dismissal because Plaintiff has no cognizable

Constitutional claim.

    As best the Government understands the allegations of Plaintiff's impermissible motion,

he was extradited from Mexico to the United States in violation of the United States – Mexico

Extradition Treaty.  See R. 53 - Plaintiff's Declaration, 1; Extradition, U.S.-Mex., May 4, 1978,

31 U.S.T. 5059.  The analysis and holding of United States v. Mejia, 448 F.3d 436 (D.C. Cir.

2006), should also be dispositive of Mr. Isasi's claim.  In Mejia, two defendants claimed the

District Court lacked jurisdiction over their case because "DEA agents took them into custody in

Panama and transferred them to the United States without following the formal requirements of

the extradition treaty between the two countries."  Id. at 442. In rejecting the defendants' claims,

the Court of Appeals for the District of Columbia Circuit found that their claims were governed

by United States v. Alvarez-Machain, 504 U.S. 655 (1992), in which the Supreme Court

considered a similar argument by a defendant who had (in fact)[6] been forcibly abducted from

Mexico, flown by private plane to Texas, and then arrested by DEA agents.  In Alvarez-

Machain, the Supreme Court established the appropriate analytical framework:

> [O]ur first inquiry must be whether the abduction of respondent from Mexico
> violated the Extradition Treaty between the United States and Mexico. If we
> conclude that the Treaty does not prohibit respondent's abduction, the rule in Ker
> applies, and the court need not inquire as to how respondent came before it.

448 F.3d at 442 (quoting Alvarez-Machain, 504 U.S. at 662.)  The "rule in Ker," referred to in

the above, is the rule set out in Ker v. Illinois, 119 U.S. 436 (1886), as applied in Frisbie v.

Collins, 342 U.S. 519 (1952), and as reaffirmed in Alvarez-Machain. Under the rule in Ker:

> [T]he power of a court to try a person for crime is not impaired by the fact that he
> had been brought within the court's jurisdiction by reason of a 'forcible
> abduction' .... [D]ue process of law is satisfied when one present in court is
> convicted of crime after ... a fair trial in accordance with constitutional procedural
> safeguards. There is nothing in the Constitution that requires a court to permit a
> guilty person rightfully convicted to escape justice because he was brought to trial
> against his will.

Alvarez-Machain, 504 U.S. at 661-62 (quoting Frisbie, 342 U.S. at 522 (quoting Ker, 119 U.S. at

444)).

---

[6]    The Alvarez-Machain trial court concluded that the agents were responsible for the defendant's
abduction, although they were not personally involved in it.  See 504 U.S. at 657.

In <u>Alvarez-Machain</u>, the Supreme Court went on to find that the extradition treaty "sa[id]
nothing about the obligations of the United States and Mexico to refrain from forcible abductions
of people from the territory of the other nation, or the consequences under the Treaty if such an
abduction occurs." 504 U.S. at 663.  Nor could the Court "infer from th[e] Treaty and its terms
that it prohibit[ed] all means of gaining the presence of an individual outside of its terms."  <u>Id.</u> at
668-69.  Accordingly, the Supreme Court concluded that "respondent's abduction" was not in
violation of the Extradition Treaty between the United States and Mexico; that the rule of <u>Ker</u>
was fully applicable to the case; and that the fact of respondent's forcible abduction did not
therefore prohibit his trial in a court in the United States "for violations of the criminal laws of
the United States."  <u>Id</u>. at 670.  Following the Supreme Court's guidance in <u>Alvarez-Machain</u>,
the District of Columbia Circuit in <u>Mejia</u> rejected the defendants' jurisdictional claims.  448 F.3d
at 443.

As <u>Alvarez-Machain</u> makes clear, even if Mr. Isasi had been forcibly or illegally
abducted from Mexico at the behest of the United States -- which Defendants certainly do not
concede -- he would nevertheless not state a claim upon which relief could be granted.  Because
Mr. Isasi would fail to state a claim upon which relief can be granted, to permit Plaintiff to
amend his complaint to add the proposed new defendants and claims would be futile.
Accordingly, his Motion for Partial Summary Judgment is without merit and should be denied.

<b><u>CONCLUSION</u></b>

For all of the foregoing reasons, the Plaintiff's Motion for Partial Summary Judgment
should be denied and this action should be dismissed.  Alternatively, Defendants request entry of
summary judgment in their favor.

15

Respectfully submitted,



_____/s/_____
JEFFREY TAYLOR, D.C. BAR # 498610
United States Attorney




_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney




_____/s/_____
BRANDON L. LOWY
Special Assistant United States Attorney
555 4th Street, N.W.   Rm. E-4405
Washington, D.C. 20530

Attorneys for Defendant

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 17th day of June, 2008, I caused the foregoing Defendants'

Reply in Support of Motion to Dismiss, or in the Alternative, for Summary Judgment,

Opposition to Plaintiff's Motion for Partial Summary Judgment to be filed via the Court's

Electronic Case Filing system, and served upon Plaintiff, <u>pro</u> <u>se</u>, by first-class mail, postage

prepaid, addressed as follows:

RICHARD ISASI
# 98A1899
ATTICA CORRECTIONAL FACILITY
P.O. Box 149
Attica, NY 14011-0149

                                             /s/
                                           BRANDON L. LOWY

YOU ARE CURRENTLY VIEWING THE TEXT-ONLY VERSION OF O

# THE U.S. NATIONAL ARCHIVES & RECORDS ADMINISTRATION

www.archives.gov

Friday, June 13, 2008

**Executive Order 11517--Providing for the issuance and signature by the Secretary of State of warrants appointing agents to return fugitives from justice extradited to the United States**

**Source:** The provisions of Executive Order 11517 of Mar. 19, 1970, appear at 34 FR 4937, 3 CFR, 1966-1970 Comp., p. 906, unless otherwise noted.

WHEREAS the President of the United States, under section 3192 of Title 18, United States Code, has been granted the power to take all necessary measures for the transportation, safekeeping and security against lawless violence of any person delivered by any foreign government to an agent of the United States for return to the United States for trial for any offense of which he is duly accused; and

WHEREAS fugitives from justice in the United States whose extradition from abroad has been requested by the Government of the United States and granted by a foreign government are to be returned in the custody of duly appointed agents in accordance with the provisions of section 3193 of Title 18, United States Code; and

WHEREAS such duly appointed agents under the provisions of the law mentioned above, being authorized to receive delivery of the fugitive in behalf of the United States and to convey him to the place of his trial, are given the powers of a marshal of the United States in the several districts of the United States through which it may be necessary for them to pass with such prisoner, so far as such power is requisite for the prisoner's safekeeping; and

WHEREAS such warrants serve as a certification to the foreign government delivering the fugitives to any other foreign country through which such agents may pass, and to authorities in the United States of the powers therein conferred upon the agents; and

WHEREAS it is desirable by delegation of functions heretofore performed by the President to simplify and thereby expedite the issuance of such warrants to agents in the interests of the prompt return of fugitives to the United States:

NOW, THEREFORE, by virtue of the authority vested in me by section 301 of Title 3 of the United States Code, and as President of the United States, it is ordered as follows:

**Section 1.** The Secretary of State is hereby designated and empowered to issue and sign all warrants appointing agents to receive, in behalf of the United States, the delivery in extradition by a foreign government of any person accused of a crime committed within the United States, and to convey such person to the place of his trial.

**Sec. 2.** Agents appointed in accordance with section 1 of this order shall have all the powers conferred in respect of such agents by applicable treaties of the United States and by section 3193 of Title 18, United States Code, or by any other provisions of United States law.

**Sec. 3.** [Deleted]

[Sec. 3 amends Executive Order 10347 of Apr. 18, 1952, Chapter 3. The amendments have been incorporated into that order.]

---

Page URL: http://www.archives.gov/federal-register/codification/executive-order/11517.html

The U.S. National Archives and Records Administration
8601 Adelphi Road, College Park, MD 20740-6001 • Telephone: 1-86-NARA-NARA or 1-866-272-6272